*This opinion is subject to revision before final publication in the Pacific Reporter.*

**2017 UT 19**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

JOHN E. HUMMEL,
*Appellant.*

No. 20130281
Filed April 4, 2017

Sixth District, Panguitch
The Honorable James R. Taylor
No. 121600018

Attorneys:

Sean D. Reyes, Att'y Gen., Kris C. Leonard, Asst. Att'y Gen.,
Salt Lake City for appellee

Gary W. Pendleton, St. George, for appellant

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE DURHAM, and
JUSTICE HIMONAS joined.

JUSTICE JOHN A. PEARCE became a member of the Court on
December 17, 2015, after oral argument in this matter, and
accordingly did not participate.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1    John Hummel was charged and tried on four counts of theft and one count of attempted theft under Utah Code section 76-6-404. All eight jurors found him guilty on all five counts. There is no dispute in the record on this point. The jury was

polled and all indicated that the verdict as announced was the one they voted for.

¶2 Yet Hummel challenges his conviction under the Unanimous Verdict Clause of the Utah Constitution. UTAH CONST. art. I, § 10.[1] He does so on the basis of an alleged lack of unanimity as to *alternative factual theories* advanced by the prosecution in support of some of the theft counts against him. Because of an alleged lack of record evidence to support some of the prosecution's theories, Hummel contends that we cannot be certain it was unanimous in its verdict. And he urges reversal on that basis. Alternatively, Hummel alleges two other sets of trial errors as grounds for reversal—in the prosecution purportedly changing theories partway through trial and in alleged "prosecutorial misconduct."

¶3 We affirm. First, we hold that unanimity is not required as to theories (or methods or modes) of a crime. Under the text and original meaning of the Unanimous Verdict Clause, unanimity is required only as to the jury's verdict—its determination of guilt, or in other words its determination that the prosecution has proven each element of each crime beyond a reasonable doubt. There is no doubt that the jury was unanimous at that level in this

---

[1] On October 25, 2016, this court requested supplemental briefing on the question whether "the Utah Constitution require[s] sufficient evidence on both of two alternative theories (or methods or modes) of a crime that are submitted to a jury." Suppl. Briefing Order 1, Oct. 25, 2016. In response the State asserted that the Due Process Clause of the Utah Constitution does not require unanimity as to alternative factual theories supporting conviction. State's Suppl. Br. *passim*, Nov. 9, 2016. In his reply to the State's supplemental brief, Hummel clarified that his appeal on this issue rests exclusively on the Unanimous Verdict Clause of the Utah Constitution, not the Due Process Clause. Reply to State's Suppl. Br. at 2–3, Nov. 18, 2016. Our analysis is accordingly focused on the Unanimous Verdict Clause; we do not reach the due process issues alluded to by the State because Hummel has not advanced a due process claim.

case. And we affirm on that basis. We also reject Hummel's other arguments, concluding that his objection to the purported change in theories mid-trial was not preserved and that his charges of "prosecutorial misconduct" fail either on their merits or under plain error review.

## I.  BACKGROUND

¶4　Garfield County does not have a full-time public defender. Instead it retains a private attorney to handle all public defense cases for a flat annual fee. In 2008 and 2009 the county retained John Hummel to do its public defense work.

¶5　Hummel apparently concluded that he could make more money if he could convince his would-be public defense clients to retain him privately. So he met with a number of these clients before his formal appointment as public defender. In those meetings Hummel tried to persuade these clients to retain him privately.

¶6　Jerry Callies was one of the defendants who met with Hummel under these circumstances. Callies met with Hummel after Callies had applied for court-appointed counsel. A bailiff directed Callies to meet with Hummel to discuss Callies' application. During the meeting Hummel told Callies that he did not qualify for appointed counsel. Hummel then suggested that Callies retain him and pay him as his private lawyer.

¶7　Hummel told the imprisoned Callies that if Callies would sign over his guns and pay $2,500, Hummel would get him out of prison that day. He also warned that if Callies did not hire Hummel, Callies would spend thirty more days in prison and might even face additional charges. Callies relented. He gave Hummel his firearms and signed a promissory note for $2,500 in exchange for representation.

¶8　Callies also alleges that Hummel asked him to fill out a new application for appointment of counsel and to list an inflated income amount in order to guarantee that Hummel would not be appointed as counsel. At trial, there was conflicting evidence as to whether Hummel was in fact appointed as Callies' counsel (a minute entry suggested that Hummel was appointed, while a

recommendation by the county attorney that Callies be denied counsel cuts the other way).

¶9     John Burke was a second would-be public defense client who met with Hummel. Hummel met with Burke after Burke had been charged with various drug and weapons charges. After filling out an application for court-appointed counsel, Burke gave the application to Hummel, believing that Hummel was in charge of the paperwork. During the meeting, Hummel mentioned that Burke, who had been in court before, must "know how courts are about public defenders." Hummel also indicated that he would be able to "better represent [Burke]" if Burke paid Hummel $5,000. After this conversation, Burke's father agreed to a $2,500 charge to his credit card. Hummel suggested he would work out a plan for payment of the remaining $2,500.

¶10  Scotty Harville and Joe Sandberg also met with Hummel. A judge had told them both that they qualified for counsel. Yet Hummel told them that "it would look better" in court if they hired private counsel rather than rely on the work of a public defender. He also said they had a "better chance" of getting out of jail and avoiding further jail time if they retained him privately. Hummel convinced both Harville and Sandberg to sign promissory notes, which, Hummel claimed, would "make it seem as though" they "had retained him as private counsel." Hummel indicated that he would never try to collect on the promissory notes. He also suggested that Harville sign over to Hummel the weapons seized upon Harville's arrest to avoid facing further charges related to the weapons.

¶11  John Spencer was the last of the would-be public defense clients at issue in this case. Spencer met with Hummel after completing his application for court-appointed counsel. Hummel asked Spencer for collateral in return for Hummel's services. And Spencer agreed—at Hummel's urging—to sign over multiple firearms to Hummel as collateral. As with Callies, a minute entry suggested that Hummel had in fact been appointed to represent Spencer.

¶12  Hummel admitted that he removed the applications for court-appointed counsel prepared by four of these clients—Burke,

Harville, Sandberg, and Spencer—from the desk of the court clerk. When questioned by the clerk about his actions, Hummel stated that he had destroyed the applications "because the men would not qualify for the public defender."

¶13  Hummel acquired the following property as a result of this scheme: at least $2,500 cash, $15,000 worth of written or oral promises, and eight firearms.

¶14  One of Hummel's clients eventually filed a complaint with the County Attorney's Office. An investigation ensued. Hummel was subsequently charged with theft under Utah Code section 76-6-404.

¶15  The case eventually proceeded to trial. At trial the prosecution advanced distinct theories of Hummel's theft under the various counts against him—different ways in which Hummel was alleged to have "obtain[ed] or exercise[d] unauthorized control over the property of another with a purpose to deprive him thereof" under Utah Code section 76-6-404. The prosecution's distinct theories were reflected in the jury instructions. On four of the counts the prosecution asserted that Hummel had committed theft (or attempted theft) by "engaging in a deception, *or* by engaging in an extortion."[2] On the fifth count, the one involving Spencer, the prosecution claimed only that Hummel had obtained the property "by deception."

¶16  The jury instructions further described ways that the jury could find that Hummel had committed theft by "deception" or "extortion"—they listed means by which the elements of the crime of theft could be satisfied. In the instructions the jury was

---

[2] The count involving Sandberg was for attempted theft, given that Hummel did not actually acquire Sandberg's property. On the attempted theft charge the jury instruction spoke of "attempt[ing] to obtain or exercise" rather than "obtain[ing] or exercis[ing]."

presented with four ways that Hummel could have extorted his victims[3] and three ways that he could have deceived them.[4]

¶17 The jurors were not required to reach unanimity on any particular theory. But they were instructed that unanimity was required as to the determination that a theft had occurred. The relevant jury instruction on unanimity read as follows: "It is not necessary that all of you agree upon a particular alternative, only that all of you do agree that a theft under one of the alternatives did occur." *Jury Instruction No. 13*.

¶18 The jury convicted Hummel on all five counts, and he now appeals. He raises four arguments. First, Hummel contends that the jury should have been required to unanimously agree on theft by deception *or* extortion for the counts where both theories were presented. Second, he asserts that the evidence was insufficient to support a guilty verdict on all counts. Third, Hummel claims that the prosecution ran afoul of article 1, section 12 of the Utah Constitution by changing the theories of theft presented to the

---

[3] The listed means of extortion were as follows: (1) "threaten[ing] to subject the alleged victim to physical confinement or restraint," (2) "threaten[ing] to . . . take action as an official against the alleged victim," (3) "threaten[ing] to . . . withhold official action related to the victim," or (4) "threaten[ing] to . . . cause such action or withholding of action."

[4] The listed means of deception were as follows: (1) "creat[ing] or confirm[ing] by words or conduct an impression of law or fact that [was] false," which Hummel did not believe to be true, and that was likely to affect the judgment of another in the transaction, (2) "fail[ing] to correct a false impression of law or fact that [Hummel] previously created or confirmed by words or conduct that [was] likely to affect the judgment of another and that [Hummel] does not now believe to be true," or (3) "prevent[ing] another from acquiring information likely to affect his judgment in the transaction." For the count that offered only a theory of theft by deception, only the latter two sub-theories were presented to the jury.

jury, in a manner preventing Hummel from knowing what crimes he was accused of and from mounting an appropriate defense. Fourth, he claims that prosecutorial misconduct tainted the verdict and violated his right to due process. We reject each of these arguments and affirm.

## II. UNANIMOUS VERDICT CLAUSE

¶19  In Utah there is a single crime of "theft." UTAH CODE § 76-6-403. In enacting this theft provision the legislature combined a variety of "separate offenses," such as embezzlement, false pretense, extortion, and blackmail, into what now constitutes "a single offense." *Id.*[5] The elements of that crime are simple and straightforward. A person commits theft if he "obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." *Id.* § 76-4-404 (stating these elements in a section titled "Theft-Elements"). Our law lists

---

[5] *See also State v. Taylor,* 570 P.2d 697, 698 (Utah 1977) ("The Utah theft statute consolidates the offenses known under prior law as larceny, embezzlement, extortion, false pretenses, and receiving stolen property into a single offense entitled theft, and clearly evidences the legislative intent to eliminate the previously existing necessity of pleading and proving those separate and distinct offenses. All that is now required is to simply plead the general offense of theft and the accusation may be supported by evidence that it was committed in any manner specified in sections 404 through 410 of the Code . . . ." (footnotes omitted)); Paul N. Cox, Note, *Utah's New Penal Code: Theft,* 1973 UTAH L. REV. 718, 733 (1973) (observing that the Utah legislature consolidated extortion, larceny, false pretenses, and several other property offenses into one single crime of theft; and noting that "[t]he complex technical distinctions among offenses against property and resulting procedural reversals of criminal convictions gave rise to a . . . movement to eliminate these distinctions through substantive consolidation").

common *means* by which those elements may be fulfilled.[6] It does so by setting forth ways that one may exercise unauthorized control over the property of another, as in different means by which one may engage in extortion or deception. *See id.* §§ 76-6-405 to -406. But these provisions set forth only non-exhaustive examples. They describe illustrative ways that the single crime of theft may be committed.[7] So the once separate offenses of theft by extortion and theft by deception are now just manners by which one commits the single offense of theft.

¶20 Sections 405 and 406 hammer this point home. In section 405 we learn that "a person commits theft" (another indication this is the single crime) "*if* the person obtains or exercises control over property of another person: (i) by deception; and (ii) with a purpose to deprive the other person of property." *Id.* § 76-6-405 (emphasis added). And this section then goes on to identify what does and doesn't count as deception. Section 406 is similar. It says that "[a] person is guilty *of theft* if he obtains or exercises control over the property of another *by extortion* and with a purpose to deprive him thereof," and also proceeds to identify prohibited means of extortion. *Id.* § 76-6-406 (emphasis added).

¶21 Theft by deception and theft by extortion are not and cannot logically be separate offenses. If they were, Hummel could

---

[6] "An accusation of theft may be supported by evidence that it was committed in any *manner* specified in Sections 76-6-404 through 76-6-410." UTAH CODE § 76-6-403 (emphasis added).

[7] A defendant could hardly escape a theft charge by admitting he "obtain[ed] or exercise[d] unauthorized control over the property of another with a purpose to deprive him thereof" but insisting that he didn't do so in any of the specific manners set forth in sections 405 through 410. (A pickpocket, for example, is still guilty of theft even if pickpocketing is not expressly set forth as a manner of committing theft.) Thus, section 404 sets the general elements of the crime of theft and sections 405 through 410. identify exemplary (non-exclusive) ways of fulfilling those elements.

be charged in separate counts and be convicted on both. That cannot be. When Hummel took money or property from a client, he may have both deceived and extorted the client. But he only committed one act of theft (just like the murderer who both poisons and suffocates the same victim has committed only one murder). This is why Hummel's counts are defined by victim, and not theory or manner of committing theft.

¶22 Nothing in the record on appeal suggests that the jury was less than unanimous in its decision to convict Hummel of theft. Nor is there any basis for finding a lack of unanimity as to the elements of theft in section 76-6-403.

¶23 Yet the jury was not given a special verdict form. It was asked to return only a general verdict. So we cannot tell from the record which of the prosecution's various theories the jury may have relied on, or whether it was unanimous as to which theory it accepted. And this uncertainty is the focus of Hummel's unanimity argument on appeal. He asserts that unanimity was required as to which of the prosecution's various theories of theft was accepted by the jury. And he also claims that evidence of at least some of those theories was lacking—a point he advances as a distinct (if related) basis for reversal.

¶24 We affirm. First, we conclude that our precedent does not support the requirement of unanimity or sufficiency of the evidence for alternative, exemplary means of committing a crime. With that conclusion in mind, we take a fresh look at our law of unanimity in light of the text and historical understanding of the Unanimous Verdict Clause. Because there is no textual, historical, or logical basis for a requirement of unanimity or sufficiency of the evidence as to alternative means of committing a crime, we conclude that the Utah Constitution imposes no such requirement. And we accordingly hold that there is no basis for reversal on the record before us on this appeal.

### A. Utah Supreme Court Precedent on Unanimity

¶25 The Unanimous Verdict Clause requires that "[i]n criminal cases the verdict shall be unanimous." UTAH CONST. art. I, § 10. At its most basic level, this provision requires the full concurrence of all empaneled jurors on their judgment as to the criminal charges

submitted for their consideration. That is the jury's function—to render a verdict on the defendant's guilt on the charges presented for their deliberation. And a non-unanimous verdict has long been viewed as an invalid one. If there are holdouts on the appropriate verdict, the result is a mistrial. *See, e.g.*, *State v. Moore*, 126 P. 322, 323 (Utah 1912) (noting that a trial "resulted in a mistrial for the reason that the jury was unable to agree upon a verdict").

¶26 The implications of this constitutional requirement do not stop there. The article I, section 10 requirement of unanimity "is not met if a jury unanimously finds only that a defendant is guilty *of a crime*.'" *State v. Saunders*, 1999 UT 59, ¶ 60, 992 P.2d 951 (plurality opinion) (emphasis added). The Unanimous Verdict Clause requires unanimity as to each count of *each distinct crime charged* by the prosecution and submitted to the jury for decision. So a generic "guilty" verdict that does not differentiate among various charges would fall short. *See also infra* ¶ 54 (citing an 1859 Maryland case in which the court refused to accept a verdict of "guilty" of murder in a circumstance in which the jury was required to also determine the precise degree of murder involved).

¶27 For similar reasons, a verdict would not be "valid if some jurors found a defendant guilty of robbery while others found him guilty of theft, even though all jurors agree that he was guilty of some crime." *Saunders*, 1999 UT 59, ¶ 60. There is no such thing as an omnibus "crime" in Utah. Our crimes are set out distinctly in our law, with different elements and distinct punishments for each offense. So a verdict of "guilty of some crime" would not tell us whether the jury was unanimous in finding guilt on any individual crime. And the verdict would fall short on that basis.

¶28 The same goes for the notion that a verdict would not "be valid if some jurors found a defendant guilty of robbery committed on December 25, 1990, in Salt Lake City, but other jurors found him guilty of a robbery committed January 15, 1991, in Denver, Colorado, even though all jurors found him guilty of the elements of the crime of robbery." *Id.* These are distinct counts or separate instances of the crime of robbery, which would

have to be charged as such.[8]  So we have also concluded that "[j]ury unanimity means unanimity as to a specific crime." *Id.*

¶29 We have also said that "'a jury must be unanimous on all elements of a criminal charge for [a] conviction to stand.'" *State v. Johnson*, 821 P.2d 1150, 1159 (Utah 1991). If there is a holdout on the jury on one of the essential elements of one of the crimes charged, there is necessarily a lack of unanimity on the question of the defendant's guilt. So if the verdict indicates a lack of unanimity on one of the essential elements of a charged crime, there will also be a basis for a reversal under the Unanimous Verdict Clause.

¶30 All of the above is well-established in our law. But Hummel asks us to take our statements in *Saunders* and *Johnson* a substantial step further. He asks us to view our cases as establishing a requirement that each "theory" presented to the jury be supported by sufficient evidence. The scope of the term *theory* is not entirely clear from the briefing. But it appears to encompass all methods, modes, or manners by which a defendant is accused of committing a crime.[9] We find no basis for this

---

[8] *See, e.g.*, *State v. Thompson*, 87 P. 709, 710 (Utah 1906) ("Every information or indictment, to be adequate, must allege a day and year on which the offense was committed. It is inadequate to charge an offense committed at some indefinite time between two specified days."); *State v. Hoben*, 102 P. 1000, 1006 (Utah 1909) ("The record here shows two separate and distinct offenses, and two separate and distinct transactions. Two separate and distinct offenses were testified to by the prosecutrix and proven by the state. One was committed on the 1st day of April, 1906, when the prosecutrix became pregnant, and the other along about the 1st of November, 1905. It was with respect to the offense of April, 1906, and to the transactions out of which it arose, that the defendant was given his constitutional privilege of a preliminary hearing.").

[9] Hummel's arguments are not even limited to the distinct *theories* of theft set forth in the exemplary provisions of the Utah Code—to theft *by extortion* or theft *by deception*. In assessing the sufficiency of the evidence to support the prosecution's theory of

(continued…)

requirement in our precedent. We have never required unanimity—or sufficient evidence—on alternate manners or means of fulfilling an element of a crime. Instead, *Johnson* and the cases it relied on required sufficient evidence on *alternate elements* of a crime as defined in our law. Our cases have used loose, broad language—referring to unanimity as to "theories" or "methods, modes, or manners" of committing a crime.[10] But we have never required unanimity or sufficient evidence on anything other than an *element*—or alternative element—of a crime.

¶31 *Johnson* involved alternate elements of the crime of attempted aggravated murder. By statute, attempted aggravated murder requires proof that the defendant attempted to cause the death of another intentionally or knowingly *and* that one of several aggravating circumstances was established. UTAH CODE § 76-5-202. In *Johnson* the prosecution alleged two aggravating circumstances—"(i) attempting to kill by administration of oxalic acid, which was either (a) a 'poison' or 'a lethal substance' or (b) 'a substance administered in lethal amount, dosage or quantity'; or (ii) attempting to kill 'for the purpose of pecuniary or other personal gain.'" *Johnson*, 821 P.2d at 1158 (quoting UTAH CODE § 76-5-202(1)(n) & (f) (1990)). Because "the State failed to prove either that oxalic acid is a poison or a lethal substance or that Johnson administered or attempted to administer a quantity of the acid that would have been lethal," the *Johnson* court found a unanimity problem with the verdict. *Id.* It reversed the aggravated attempted murder conviction without considering the sufficiency of the evidence on the other statutory aggravator—attempting to

---

theft, Hummel also analyzes *sub-theories*. He asks not whether there was sufficient evidence to support a theory of theft by extortion, but whether there was sufficient evidence to support the separate means by which the prosecution argued that theft by extortion was committed. That exacerbates the line-drawing problem introduced by Hummel's position.

[10] *See Johnson*, 821 P.2d at 1159 *overruled in part on other grounds by State v. Crank*, 142 P.2d 178 (Utah 1943); *State v. Tillman*, 750 P.2d 546, 563 (Utah 1987) (plurality opinion); *State v. Russell*, 733 P.2d 162, 165 (Utah 1987).

kill for pecuniary or other personal gain. And it based that decision on the Unanimous Verdict Clause.

¶32 The problem in *Johnson* was rooted in the jury's entry of only a general verdict. "No special verdicts were given that would indicate upon which aggravating circumstance the jury based the conviction." *Id.* at 1159. And because the court "has stated that a jury must be unanimous *on all elements of a criminal charge* for the conviction to stand," the *Johnson* court held that reversal was required "if the State's case was premised on more than one factual or legal theory *of the elements of the crime* and any one of those theories is flawed or lacks the requisite evidentiary foundation." *Id.* (emphasis added). But the *Johnson* court's subsequent analysis of sufficient evidence was only on the alternative elements of the crime, not anything below that level, such as theories or modes. So its broader language must be read in light of what it said elsewhere, and what it actually did — merely require sufficient evidence on both alternative elements, nothing more.

¶33 The *Johnson* opinion cannot sustain the broad reading Hummel gives it. *Johnson* in no way requires sufficient evidence on every *method or means* of fulfilling each individual element of each crime in question. It imposes that requirement only for "all elements of a criminal charge." *Id.*

¶34 *Johnson*'s predecessors are along the same lines. The plurality in *State v. Tillman* required unanimity on—and sufficient evidence to support a verdict on—the alternative elements of the crime of first-degree murder. 750 P.2d 546, 562–68 (Utah 1987) (plurality of the court requiring unanimity as to which of two aggravating circumstances was established—specifically, whether defendant intentionally caused the victim's death while engaged in the commission of (a) burglary or attempted burglary, or (b) arson or attempted arson). Our other cases are similar.[11]

---

[11] The other two cases on point are *State v. Russell*, 733 P.2d 162 (Utah 1987), and *State v. Johnson*, 287 P. 909 (Utah 1930) *overruled in part on other grounds by State v. Crank*, 142 P.2d 178 (Utah 1943).

(continued…)

*Russell* raised the question whether unanimity was required as to which of three alternative mental states for second-degree murder was proven beyond a reasonable doubt—"intentionally or knowingly" causing death; intending to cause "serious bodily injury" and causing death by an act clearly "dangerous to human life"; and causing death in circumstances evidencing "depraved indifference to human life." *Russell*, 733 P.2d at 164. The court was splintered. The lead opinion (of Justice Howe, joined by Justice Hall) concluded that unanimity was not required at this level, asserting that "[t]he decisions are virtually unanimous that a defendant is not entitled to a unanimous verdict on the precise manner in which the crime was committed." *Id.* at 165. Justice Stewart concurred in the result and wrote separately. He indicated his view "that it would have been preferable for the trial judge to give an instruction on unanimity as to the defendant's *mens rea*," but concluded that "the fundamental principle of jury unanimity was [not] violated in this case." *Id.* at 169. Justice Durham also concurred in the result and authored an opinion. She indicated that she would require unanimity except where "(1) a single crime has been charged, even though it may be committed in alternative ways or by alternative but related acts, (2) those acts are not substantially distinct from each other in terms of either their legal, factual, or conceptual content, and (3) the State has presented substantial evidence supporting each alternative mode of commission of the crime." *Id.* at 176. Yet she voted to affirm because she found these conditions to be met. *Id.* at 178 (concluding that the three alternative *mens rea* elements arise under "a single offense," that the three alternative elements were "significantly distinct from one another in terms of their legal or factual content," and there was sufficient "evidence on each of the three alternatives"). Justice Zimmerman concurred only in the result, without opinion. *Id.* at 178.

Thus, *Russell* also stopped short of resolving the question in this case. Like *Tillman*, *Russell* involved not distinct "theories" in the sense of merely different manners of fulfilling an element of a crime, but different alternative *elements* of a crime. And there was no majority view on the standard for assessing the constitutional requirement of unanimity as to such alternative elements.

(continued…)

14

¶35 Thus, the sufficiency of evidence requirement pushed by Hummel is by no means clearly established. Our past cases have invoked this principle only in the context of *alternative elements* of

---

Lastly, in the earlier *Johnson* case the court reversed an involuntary manslaughter conviction where there was insufficient evidence to support one of the alternative elements for satisfying the unlawful act requirement of the statute. 287 P. at 911–12; *see also State v. Rasmussen*, 68 P.2d 176, 182 (Utah 1937) (plurality opinion) (identifying the unlawful acts requirement of the manslaughter statute as involving "several elements . . . any one of which properly pleaded and proved would support a [guilty] verdict"); *State v. Roedl*, 155 P.2d 741, 747 (Utah 1945) (discussing *Rasmussen* and reiterating that an "unlawful act[]" was one of the "necessary elements to be proved beyond a reasonable doubt in proving the crime of involuntary manslaughter and the finding of a verdict of guilty by the jury").

In 1928, our law defined involuntary manslaughter as "the unlawful killing of a human being without malice . . . in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection." UTAH CODE § 103–28–5 (1928). Like the aggravating circumstance element of aggravated murder, the element requiring a killing "in the commission of an unlawful act" is subject to the requirement of unanimity, but that element may be proved by reference to any number of statutory violations. The information in *Johnson* asserted several alternative unlawful acts not amounting to a felony, including driving while intoxicated and a variety of traffic infractions. *Johnson*, 287 P. at 910. The defendant contended that there was insufficient evidence to support a finding that he was driving while intoxicated and the court agreed. *Id.* at 911–12. Because the jury had rendered only "a general verdict of guilty 'as charged in the information,'" the court could not determine whether there had been unanimity on the unlawful act element. *Id.* at 912. Accordingly, the court reversed the conviction. *Id.* Contrary to Hummel's assertion, the earlier *Johnson* case only strengthens our conclusion that unanimity is required only as to *elements* of an offense.

a crime. We have never extended this principle to proof of alternative means of fulfilling an element of a crime.

## B. The Unanimous Verdict Clause

¶36 Our precedents in this field are entitled to a measure of respect. "*Stare decisis* 'is a cornerstone of Anglo-American jurisprudence.'" *Eldridge v. Johndrow*, 2015 UT 21, ¶ 21, 345 P.3d 553 (citation omitted). It "is crucial to the predictability of the law and the fairness of adjudication." *Id.* (citation omitted).

¶37 Yet the presumption of preserving our past holdings is a rebuttable one. The "presumption against overruling precedent is not equally strong in all cases." *Id.* at ¶ 22. We have identified circumstances in which we may properly repudiate the standards in our prior decisions, as where the standard we have adopted has become unworkable over time, in a manner that sustains no significant interest of reliance on our decisions. *See id.* (observing that "how firmly precedent has become established . . . encompasses a variety of considerations, including . . . how well it has worked in practice, . . . and the extent to which people's reliance on the precedent would create injustice or hardship if it were overturned").

¶38 In all events, the principle of *stare decisis* is focused on *holdings* of our prior decisions. Our law has long recognized a significant distinction between holding and dicta. *See Spring Canyon Coal Co. v. Indus. Comm'n of Utah*, 277 P. 206, 210 (Utah 1929) ("Dictum is not embraced within the rule of stare decisis."). Thus, we retain even greater flexibility on points of law reflected only in the broad dicta of our prior decisions. *See Eldridge*, 2015 UT 21, ¶ 32 (suggesting a relaxed standard for repudiation of dicta, noting that "we would follow even . . . dicta if we had no good reason to do otherwise").

¶39 That is where we stand on the question in this case. We have never squarely decided whether the Unanimous Verdict Clause requires unanimity on different means of fulfilling the elements of a crime, much less whether any such requirement should also sustain a requirement of sufficient evidence on each such means presented to the jury. This is an important issue. Absent a square holding resolving it, we return to first

principles—to the text and original meaning of the constitution. And we affirm.

¶40 First, there is nothing in the language or history of the Unanimous Verdict Clause to support the requirement of unanimity on, or sufficient evidence of, alternative means of fulfilling the elements of a crime. The constitution requires unanimity only as to the "verdict," and that guarantee has long been understood to be limited to the matters submitted to the jury for decision (as to the defendant's guilt). So we interpret the Utah Constitution in line with this understanding, and affirm on the ground that there is no relevant unanimity problem on the record before us on this appeal.

¶41 Second, there is no logical connection between the constitutional guarantee of a unanimous verdict and the judicially imposed requirement of sufficient evidence to support alternative theories advanced by the prosecution. If anything the existence of sufficient evidence to sustain alternative theories would *heighten* the risk of a lack of unanimity. *See infra* ¶¶ 77–79. And if we were serious about requiring unanimity as to alternative means of fulfilling an element of a crime, we would not examine the sufficiency of the evidence; we would require a special verdict form. Our longstanding refusal to do so underscores the fact that the sufficiency of the evidence requirement is not a component of the constitutional guarantee of unanimity. This suggests that it would be improper to extend *Johnson* for this reason as well. We may have reason to respect the *Johnson* decision as a matter of *stare decisis*; but there is no basis for extending it further.

¶42 Finally, there is tension between the principle advanced by Hummel and longstanding caselaw on harmless error. The operative principle in these parallel cases goes to the appellant's burden of persuasion on appeal. That burden has long been understood to encompass an obligation to prove not only *error* but *prejudice*. The converse principle is known as the doctrine of harmless error. It holds that we reverse a judgment on appeal only if an error is shown to have likely made a difference in the lower court. And it yields the benefit of the doubt on that question to the appellee—or in other words to the outcome in the lower court. Hummel's reading of the Unanimous Verdict Clause is in

substantial tension with this doctrine. Allowing an appellant to overturn a verdict based only on a showing of insufficient evidence to support an alternative means of establishing an element of a crime is problematic. It effectively suspends the requirement that an appellant establish not just error, but *prejudicial* error. And it does so by yielding the benefit of the doubt to the appellant—by holding that because we can't be sure there was unanimity where there is a lack of evidence on alternative means of proving an element of a crime, we should reverse and remand for a new trial.

## 1. Text and Original Meaning

¶43 In adopting the Unanimous Verdict Clause, the framers of our Utah Constitution indicated their intent to memorialize a "well[-]understood, definite, common-law" principle. 1 UTAH CONVENTION DEBATES 494 (1895). We therefore interpret this provision in a matter in line with this historical understanding. And we reject the requirement of unanimity as to alternative means of fulfilling an element of a crime. We affirm here because the jury was unanimous on its *verdict*—on all matters submitted to it for decision.

### a. Historical principles of unanimity

¶44 The requirement of a unanimous jury has common law origins. At common law, "the truth of every accusation"—of any criminal charge in an "indictment" or "information"—had to "be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbors." 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 343 (1769). This was an essential feature of the common law right to a jury trial at the time of the founding of our state Constitution. "A trial by jury [wa]s generally understood to mean . . . a trial by a jury of twelve men, impartially selected, who must unanimously concur *in the guilt of the accused* before a legal conviction c[ould] be had." 2 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES 559 n.2 (5th ed. 1891) (emphasis added).

¶45 Yet the requirement of unanimity went no further than that. Unanimity was required "on the point or issue submitted to the[] jury." ARCHIBALD BROWN, A NEW LAW DICTIONARY AND

INSTITUTE OF THE WHOLE LAW 377 (1874). And the point or issue submitted to the jury was purely a matter of guilt. Jurors were asked only to render a decision on the criminal charges presented—to enter a verdict of "guilty" or "not guilty" on each charge submitted for their deliberation. So "jurors [we]re not obliged to agree in the reason for finding a verdict as it is found; and if a reason be given by one or more of them, upon a question being asked by the judge, for finding it as it is found, this [wa]s not to be considered or recorded as part of the verdict." 7 MATTHEW BACON, A NEW ABRIDGEMENT OF THE LAW 8 (5th ed. 1798).

¶46 The Unanimous Verdict Clause articulates this same principle. It does so by requiring that "*the verdict* shall be unanimous" in criminal cases. UTAH CONST. art. I, § 10 (emphasis added). By law and longstanding practice, the jury's *verdict* is simply its determination of guilt or innocence. *See, e.g.*, *State v. Creechley*, 75 P. 384, 384 (Utah 1904) ("A verdict upon a plea of not guilty shall be either 'Guilty' or 'Not guilty.'" (citation omitted)).

¶47 A *verdict* consists of the jury's decision on the matters submitted to it for decision.[12] In criminal cases the jury generally is charged only with determining the defendant's guilt on the

---

[12] *See* WILLIAM C. COCHRAN, THE STUDENTS' LAW LEXICON: A DICTIONARY OF LEGAL WORDS AND PHRASES 266 (1888) (defining *verdict* as "the decision of a jury reported to the court, on the matters submitted to them on the trial of a cause"); HENRY CAMPBELL BLACK, DICTIONARY OF LAW 1216 (1891) (defining *verdict* as the "formal and unanimous decision or finding of a jury, impaneled and sworn for the trial of a cause, upon the matters or questions duly submitted to them upon the trial"); J. KENDRICK KINNEY, A LAW DICTIONARY AND GLOSSARY 683 (1893) (defining *verdict* as "the finding of a jury as to the truth of matters of fact submitted to them for trial").

counts presented at trial.[13] Other matters, such as sentencing, generally are submitted to the trial judge for decision.

¶48 As a general rule, juries are asked to drill no deeper than a judgment of conviction or acquittal. This is the essence of a general verdict. Such a verdict involves only a "find[ing] for the plaintiff or defendant" in a civil case, or "a verdict of guilty or not guilty" in a criminal case. 2 STEWART RAPALJE & ROBERT L. LAWRENCE, A DICTIONARY OF AMERICAN AND ENGLISH LAW 1326 (1888).[14]

¶49 In the standard case submitted on a general verdict, the constitutional requirement of unanimity calls for a straightforward assessment. All jurors must agree on whether the defendant has been proven guilty beyond a reasonable doubt. Any holdouts will require a mistrial.

¶50 Special verdicts, of course, have long been permitted.[15] But they are not required.[16] And the constitutional requirement of

---

[13] *See, e.g., State v. Creechley*, 75 P. 384, 384 (Utah 1904) ("A verdict upon a plea of not guilty shall be either 'Guilty' or 'Not guilty,' which imports a conviction or acquittal of the offense charged in the information or indictment. Upon a plea of a former conviction or acquittal of the same offense, it shall be either 'For the state' or 'For the defendant.'" (quoting UTAH REV. ST. 1898, § 4891)).

[14] *See also Callahan v. Simons*, 228 P. 892, 894 (Utah 1924) (noting that in a general verdict, "as contradistinguished from a special verdict," "the jury merely . . . found the issues in favor of the defendant and stated the amount that was allowed him on his counterclaim"); *State v. Tillman*, 750 P.2d 546, 563 (Utah 1987) (observing that "the jury was given a general verdict form which it subsequently returned unanimously finding defendant guilty of first degree murder").

[15] *See, e.g.,* 1876 COMPILED UTAH LAWS 728, § 175 (declaring that a special verdict lays out the jury's findings of fact, not the evidence needed to prove those conclusions); UTAH REV. ST., § 3292(2) (1898) (providing means of proving that a juror has "been

(continued…)

unanimity in the case of a special verdict is still directed to the question of guilt or innocence on the crimes charged and submitted for the jury's decision. A special verdict form may ask the jury to indicate its specific factual findings on certain issues, in addition to its conclusion as to the defendant's guilt.[17] But the constitutional requirement of unanimity extends only to the jury's determination that the prosecution proved each element of the crimes in question beyond a reasonable doubt.

¶51 On either a general or special verdict the scope of the protections afforded by the Unanimous Verdict Clause is defined by the *elements of the substantive criminal law*. If a defendant is charged with first-degree murder, for example, the prosecution must prove beyond a reasonable doubt that the defendant "cause[d] the death of another" either "intentionally or knowingly." UTAH CODE § 76-5-203(2)(a). On a general verdict the jury is charged only with deciding the defendant's guilt—a determination that then forms the basis for a judgment of

---

induced to assent to any general or special verdict"); *Toltec Ranch Co. v. Cook*, 67 P. 1123, 1123 (Utah 1902) (concluding that there was no "irregularity . . . as to warrant a reversal" where jury found both general and special verdicts for each defendant, and the "court adopted the verdict and special findings of the jury").

[16] "At early common law, the jury determined whether it would bring in a general or special verdict. . . . With few exceptions, it is discretionary with the court whether to require a general or special verdict." 6 AM. JUR. TRIALS 1043 (2016).

[17] *Cf.* 3 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 377 (1768) (noting that in a special verdict, the jury "state[s] the naked facts, as they find them to be proved, and pray the advice of the court thereon"); *Special verdict*, Black's Law Dictionary (10th ed. 2014) ("A verdict in which the jury makes findings only on factual issues submitted to them by the judge, who then decides the legal effect of the verdict.").

conviction or acquittal entered by the court.[18] On a special verdict, the jury must be unanimous in its  findings on these elements. In neither case, however, would the Unanimous Verdict Clause require unanimity on the manner, mode, or factual or legal theory on which its verdict is based.

¶52 In a case in which the prosecution presented alternative evidence of the mechanism of the cause of death, for example, the jury would not be required to achieve unanimity as to which mechanism it agreed upon beyond a reasonable doubt.[19] So if the

---

[18] *See, e.g.*, *State v. Logan*, 712 P.2d 262, 264 (Utah 1985) (distinguishing the verdict handed down by the jury from the judgment entered by the trial judge).

[19] *See United States v. Furlong*, 18 U.S. 184, 201 (1820) (unanimity not required on whether the crime of piracy was "committed . . . in a haven . . . or bay," on one hand, or "on the high seas," on the other; general verdict deemed sufficient); GEORGE BEMIS, REPORT OF THE CASE OF JOHN W. WEBSTER 471 (1850) (quoting Chief Justice Lemuel Shaw in the Webster case on whether unanimity was required as to "several modes of death": "The indictment is but the charge or accusation made by the grand jury, with as much certainty and precision as the evidence before them will warrant. They may well be satisfied that the homicide was committed, and yet the evidence before them leave it somewhat doubtful as to the mode of death . . . . Take the instance of a murder at sea. The man is struck down, —lies some time on the deck insensible, and in that condition is thrown overboard. The evidence proves the certainty of a homicide by the blow, or by the drowning, but leaves it uncertain by which. That would be a fit case for several counts . . . . [I]t would certainly be unreasonable that the defendant should escape conviction because of difference of opinion among the jurors as to whether his victim was killed by the blow or by drowning, when all were convinced that the killed was effected by the felonious act of the defendant."); *People v. Sullivan,* 65 N.E. 989, 989–90 (N.Y. 1903) ("[I]t was not necessary that all the jurors should agree in the determination that there was a deliberate and premeditated design to take the life of the

(continued…)

jury heard evidence that the defendant both poisoned the victim and tried to suffocate him with a pillow, there would be no requirement for the jury to agree on which mechanism was the ultimate cause of death. That is because *the precise mechanism* of the cause of death is not an element of the crime of murder. All that matters under our substantive law is that the defendant caused death knowingly or intentionally.

¶53  This is not to say that a mere verdict of *guilty* or *not guilty* will always suffice. That depends on the elements of the charged crimes as defined by the lawmaker, and on whether the verdict is clear on its face in establishing that all jurors agreed on each element of each crime.

¶54  Where separate crimes are charged, for example, a verdict may be insufficient if it fails to disclose the jury's unanimity on all elements of each crime. In a case involving charges of both first-

---

deceased, or in the conclusion that the defendant was at the time engaged in the commission of a felony, or an attempt to commit one. It was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime of murder in the first degree as that offense is defined by the statute."); *State v. Baker*, 63 N.C. 276, 281 (1869) (observing that "[t]he killing is the substance, the mode is the form: and while it is important, that the prisoner should be specifically informed of the charge against him, so that he may make his defence, yet he cannot complain that he is informed that, if he did not do it in one way, he did it in another — both ways being stated; and it is not to be tolerated, that the crime is to go unpunished, because the precise manner of committing it is in doubt. . . . [W]hen there are several counts, some [supported by the evidence] and some [not], and a general verdict, judgment may pass upon the good, rejecting the [unsupported] as surplusage. Where there are several counts, and evidence was offered with reference to one only, the verdict though general, will be presumed to have been given on that alone. Where there are several counts, charging the same crime to have been done in different ways, the jury are not bound to distinguish in which way it was done, but the verdict may be general." (citations omitted)).

degree murder and manslaughter, for example, it would not be enough for the jury to unanimously indicate its support for a judgment of guilt. The classic case is *Ford v. State*, 12 Md. 514, 548 (Md. 1859). *Ford* involved a jury verdict in a case involving both manslaughter and first-degree murder charges. The jury foreman in *Ford* merely announced a verdict of "guilty," and eleven of twelve jurors stated only that they found the defendant "guilty" rather than "guilty of murder in the first degree." *Id.* And the Maryland Supreme Court held that the verdict fell short on unanimity grounds, explaining that "[t]he law says, that when a person shall be found guilty of the crime of murder, by a jury, the jury *shall, in their verdict*, find the degree." *Id.* at 549. Because "this had not been done" in *Ford*, the court reversed. *Id.*

### b. The unanimous verdict in this case

¶55  This is the plain meaning of the Unanimous Verdict Clause of the Utah Constitution. The requirement of unanimity extends only to the jury's *verdict*. And a verdict—both historically and today—is defined by the matters submitted to the jury for decision. Such matters, in turn, are dictated by the substantive criminal law.

¶56  As noted above, the substantive criminal law of *theft* in Utah sets forth a single crime with a discrete set of elements. Our legislature has expressly consolidated the common-law offenses "heretofore known as larceny, larceny by trick, larceny by bailees, embezzlement, false pretense, extortion, blackmail, [and] receiving stolen property" into a "single offense" denominated as "theft." UTAH CODE § 76-6-403. Under Utah Code section 76-6-404, "[a] person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." Those are the elements of the crime of theft. And these are accordingly the matters committed to the jury in entering its verdict.

¶57  No other matters—whether denominated "theories" or "methods, modes, or manners" of committing a crime, *supra* ¶ 16 n.6—must be found by the jury to sustain a verdict on a count charging theft. And accordingly no unanimity is required under the Utah Constitution on anything except the prosecution's charge

that Hummel exercised unauthorized control over his various clients' property (on the dates in the five counts against him) with the purpose to deprive them of such control.

¶58 Hummel identifies multiple "theories" behind the charges of theft against him—extortion by threatening to subject someone to criminal confinement, extortion by threatening to take or withhold official action, extortion by threatening to cause a public official to take or withhold official action, deception by a false impression of law or fact, and deception by preventing another from acquiring information likely to affect his judgment. But those "theories" do not represent distinct criminal offenses with different elements in our substantive criminal law. Instead they are definitional *examples*—and non-exhaustive ones—of the various means by which someone may commit the single offense of theft.

¶59 The operative statutory provisions bear this out. Utah Code section 76-6-405 spells out how someone may commit theft through deception. But it does not establish a separate crime of theft by deception. It says only that "[a] person commits *theft* if the person obtains or exercises control over property of another person (i) by deception; and (ii) with a purpose to deprive the other person of property." UTAH CODE § 76-6-405(2)(a) (emphasis added). Section 76-6-406 is along the same lines. It says that "[a] person is guilty *of theft* if he obtains or exercises control over the property of another by extortion and with a purpose to deprive him thereof," and then proceeds to define "extortion" for purposes of the crime of theft. UTAH CODE § 76-6-406(1) (emphasis added).

¶60 Importantly, neither of these provisions purports to define a separate crime. Both define the crime of *theft*.[20] For that reason

---

[20] "A person commits *theft* if the person obtains or exercises control over property of another person: (i) by deception." UTAH CODE § 76-6-405(1) (emphasis added). "A person is guilty of *theft* if he obtains or exercises control over the property of another by extortion . . . ." *Id.* § 76-6-406(1) (emphasis added).

they do not alter the *elements of theft*, or add in any way to what the jury must find to enter a verdict on a charge of theft.

¶61 We see no basis for this court to second-guess the legislature's determination of the requisite elements of the crime of theft. Hummel appears to argue that the different "theories" on which the jury might find guilt are legally distinct because each contains alternative *actus reus* elements by which a person could be found to have committed theft. But our substantive criminal law does not bear that out. The statutory examples of means by which a person can meet the elements of the single crime of theft are not "alternative actus reus elements" of theft. They are simply *exemplary means* of satisfying the criminal elements defined by the legislature—that the defendant "obtain[ed] or exercise[d] unauthorized control over the property of another with a purpose to deprive him thereof." UTAH CODE § 76-6-404.

¶62 The relevant parallel here would be to the above-noted example of a murder case with evidence of two alternative means by which it was committed—by poison and by suffocation. There is no distinct crime of murder by poison or murder by suffocation. And for that reason it cannot be said that these distinct theories or means of committing the murder are legally distinct, or more importantly, that they are legal *elements* that must be found unanimously by the jury to have a valid conviction under the Unanimous Verdict Clause.

¶63 The only defensible way to distinguish what is legally distinct from what is not is to defer to the substantive criminal law. Doing so here would require unanimity only as to the elements of the charge of theft on each of the counts against Mr. Hummel. Nothing in the record suggests that there were any holdouts among the jurors at that level. And that leads to an affirmance under the plain meaning of the Unanimous Verdict Clause set forth herein.[21]

---

[21] The district court in this case followed this line of reasoning precisely. In issuing the jury instructions for Hummel's trial, the trial court rejected defense counsel's proposal for an alternative

(continued…)

¶64 Hummel's construction of the Unanimous Verdict Clause would set us on a slippery slope without a logical endpoint. If unanimity is required as to anything we could call a distinct "theory" of a crime, our juries would be required to agree on every minute detail presented by the evidence—on whether a murder was caused by suffocation or poisoning, or whether a shoplifter placed a stolen item in his pocket or backpack. If we divorced the requirement of unanimity from the elements set forth in the substantive criminal law, we would open the door to the argument that any and every detail presented by the evidence implicates a distinct "theory" of the crime charged.[22]

---

instruction that would have required unanimity as to the means or manner in which the theft was committed. And it did so, correctly, on the basis of the determination that "the unanimity rule" turns on "whether [the charged crime] is a single crime that can be committed in different ways." *Transcript of Trial*, 132 (Feb. 1, 2013). Because the theft charges at issue here fit that mold, the district court properly held that there was no requirement of unanimity at the granular level of the "way[]" in which the crime was committed.

In explaining his conclusion, the trial judge raised a murder hypothetical, in which there is some question of how the murder was caused. And he rightly noted that under our cases "it doesn't really matter" whether they agreed on the means of causing death "if they think that he caused the death." *Id*. That conclusion is precisely in line with our decision today. We affirm on that basis, while noting that Hummel's contrary approach would open a hornet's nest of problems in future cases, as in the murder hypothetical raised above.

[22] *See State v. Russell*, 733 P.2d 162, 167–68 (Utah 1987) (Howe, J., plurality) (expressing agreement with concerns raised in other courts about "the difficulty that would be encountered with juries if" unanimity were required on sub-elemental aspects of a crime); *State v. James*, 698 P.2d 1161, 1165 (Alaska 1985) ("There are differences in conduct, intent or circumstances between the subsections of almost every criminal statute in our code. Rejection of the [limiting principles of the] *Sullivan* rule would therefore

(continued…)

¶65 We avoid these line-drawing problems by leaving the requirement of unanimity where it stands under the plain text of the Unanimous Verdict Clause. We therefore hold that the constitutional requirement of unanimity is limited to those matters identified as *elements* of a crime in the substantive criminal law. Mere examples of ways of fulfilling such elements, on the other hand, are not a necessary part of a verdict, and thus fall beyond the requirement of unanimity.[23]

2. The Requirement of Sufficient Evidence of Alternative Theories

¶66 The sufficiency of the evidence requirement is generally traced back to the influential decision in *People v. Sullivan*, 65 N.E.

---

result in juror disagreement over semantics in many cases in which they unanimously agree that the defendant committed the wrongful deed. . . . By requiring semantic uniformity we encourage overcomplicated instructions and hung juries in cases in which the jurors actually agree upon the defendant's guilt."); *Holland v. State*, 280 N.W.2d 288, 293 (Wis. 1979) ("To require unanimity as to the manner of participation would be to frustrate the justice system, promote endless jury deliberations, encourage hung juries, and precipitate retrials in an effort to find agreement on a nonessential issue.").

[23] In rejecting Hummel's approach we also avoid another line-drawing problem of constitutional magnitude—whether reversal on the basis of insufficient evidence of one of more theories of a crime bars retrial under the Double Jeopardy Clause. This is an important, complex question without a clear answer. Some courts have rejected double jeopardy arguments in analogous circumstances. *See United States v. Garcia*, 938 F.2d 12, 13 (2d Cir. 1991); *State v. Kalaola*, 237 P.3d 1109, 1112 (Haw. 2010). But there is a contrary argument with some weight behind it: Hummel has once been subjected to the full range of jeopardy that attaches to a defendant at trial, and it is not at clear whether a retrial after reversal on the grounds proposed by Hummel would give the state "another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States*, 437 U.S. 1, 11 (1978). Our decision to affirm allows us to avoid this difficult question.

989, 989 (N.Y. 1903). Courts in Utah and elsewhere have cited *Sullivan* as support for a requirement of "substantial evidence to support each of" two alternative theories of a crime.[24] But this conclusion is rooted in a misunderstanding of *Sullivan*. And it bears no logical connection to the constitutional requirement of unanimity, and in fact undermines it. We reject it, at least as extended to alternative means of fulfilling an element of a crime.

### a. *Sullivan*

¶67 *People v. Sullivan* involved two alternative grounds to support a charge of first-degree murder: (1) that the victim was killed with a "deliberate and premeditated design to effect his death"; and (2) "that he was killed by the defendant while the latter was engaged in the perpetration of a felony, or an attempt to commit one." 65 N.E. at 989. The jury returned a verdict of "guilty." Sullivan challenged the verdict on appeal, asserting that the jury had failed to identify the specific ground on which they had found guilt. The New York Court of Appeals affirmed.

¶68 In so doing it emphasized that "[t]here was but a single crime charged in the indictment against the defendant[]—that of murder in the first degree." *Id.* And it noted that "the only issue to be determined by the jury was whether the defendant had been guilty of that crime." *Id.* Because guilt of that crime could be

---

[24] *See State v. Tillman*, 750 P.2d 546, 564 (Utah 1987) (plurality opinion of Hall, C.J.); *see also State v. Arndt*, 553 P.2d 1328, 1330 (Wash. 1976) (citing *Sullivan* for the proposition that "it is unnecessary to a guilty verdict that there be more than unanimity concerning guilt as to the single crime charged, . . . regardless of unanimity as to the means by which the crime is committed *provided there is substantial evidence to support each of the means charged*" (emphasis added)); *Bloomquist v. State*, 914 P.2d 812, 818–19 (Wyo. 1996) (holding that defendant was not denied the constitutional right to a unanimous verdict when he was charged with committing a crime in two different ways, the jury returned a general verdict, and there was "sufficient evidence support[ing] each alternative ground" for the conviction).

established upon "proof *either* that the defendant killed the deceased with a deliberate and premeditated design to effect his death, *or* while the defendant was engaged in the commission of a felony, or an attempt to commit a felony," the *Sullivan* court concluded that it was not "necessary that a jury . . . should concur in a single view of the transaction disclosed by the evidence." *Id.*

¶69 In other words, *Sullivan* said "it was not necessary that all the jurors should agree in the determination that there was a deliberate and premeditated design to take the life of the deceased, or in the conclusion that the defendant was at the time engaged in the commission of a felony, or an attempt to commit one." *Id.* at 989–90. "It was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime of murder in the first degree as that offense is defined by the statute." *Id.* at 990.

¶70 This account of *Sullivan* is entirely consistent with the plain text of the Utah Unanimous Verdict Clause, as set forth above. Yet, as noted, *Sullivan* is frequently cited as the root of the requirement of sufficient evidence to support both of two alternative theories of a crime. One basis for this view of *Sullivan* is the following statement in the *Sullivan* majority: "'If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and part upon the other.'" *Id.* (quoting *Murray v. N.Y. Life Ins. Co.,* 96 N.Y. 614, 615 (N.Y. 1884)).

¶71 That statement is not a basis for a requirement that *each theory* presented to the jury be supported by sufficient evidence. *See Johnson*, 821 P.2d at 1159 (speaking of a rule of reversal where "any one" of the prosecution's theories "lacks the requisite evidentiary foundation"). Instead, the *Sullivan* majority—and the *Murray* opinion on which it relies—articulates a much more lenient standard. The operative requirement of *Sullivan* is simply that "*the conclusion* may be justified *upon either of two interpretations of the evidence.*" *Sullivan*, 65 N.E. at 989 (emphasis added). In context, the relevant "conclusion" is the determination of guilt on the "single crime charged in the indictment"—and on "the only issue to be determined by the jury," which was "whether the

defendant had been guilty of that crime." *Id.* With this in mind, the requirement that the verdict be justifiable "upon either of two interpretations of the evidence" is just a classic statement of the general requirement of sufficient evidence to sustain a jury verdict.

¶72 *Sullivan* required sufficient evidence to support "*either of two*" theories of the crime presented to the jury. Naturally. If the record is lacking in evidence of *both* a premeditated killing *and* a killing in the course of a felony, there can be no evidentiary basis for a jury to find the defendant guilty of the single crime of first-degree murder. This version of the *Sullivan* rule is unimpeachable. It is also the view that prevailed when *Sullivan* was handed down—and around the time of the framing of the Utah Constitution.[25]

¶73 Yet *Sullivan* was misconstrued over time to require sufficient evidence upon *both of two* theories of a crime. That conclusion is traceable to a separate sentence in the *Sullivan* opinion—a stray statement that "[i]f as to either claim the evidence was insufficient to justify the submission of the question to the jury, the conviction must be reversed, since it cannot be known on which ground the jury based its verdict." 65 N.E. at 989. Yet this statement seems to turn the more detailed analysis in the opinion on its head. It seems to require sufficient evidence on

---

[25] *See, e.g.*, *State v. Baker*, 63 N.C. 276, 280 (N.C. 1869) (citing WHARTON'S CRIM. LAW § 3047) (affirming conviction on homicide where the indictment contained four counts covering several distinct methods of commission, all of which were submitted to the jury, but only one of which was supported by the evidence); *Rhea v. State*, 88 N.W. 789, 799 (Neb. 1902) (applying the *Murray* rule where the defendant was charged with first degree murder, either by a premeditated act or in the course of a felony; observing that "[t]he rule, as we understand the authorities," was that the jury could return a general verdict when either of the alternatives was supported by the evidence (emphasis added)).

*both* theories of a crime, or in other words *reversal* (not affirmance) if the evidence is insufficient "as to either claim."

¶74 The purported rule of reversal if evidence is lacking on "either" theory of the crime is inconsistent with the thrust of the majority's analysis in *Sullivan*. And this point is a rank dictum: It was completely unnecessary to the court's holding (given that the majority found evidence supporting both theories of the crime[26]), and it appears to represent only an *arguendo* response to the dissent.

¶75 In any event, over time this stray sentence has become the tail that has wagged the *Sullivan* dog. The opinion generally—and quite clearly—declined to require unanimity on which of two theories of the crime was accepted by the jury. And it unequivocally held that evidence of "either" variant was sufficient to sustain the verdict. Yet in this court and others, *Sullivan* eventually became known for a supposed rule of *reversal* if evidence was lacking on either theory of a crime, or in other words a requirement of sufficient evidence as to *both* theories of the crime.

### b. The (il)logic of the requirement of sufficient evidence on alternative theories

¶76 For these reasons the notion of a requirement of sufficient evidence to sustain both of two theories of a crime is a product of a mistaken reading of precedent.[27] And that begs a

---

[26] *See People v. Sullivan*, 65 N.E. 989, 991–92 (N.Y. 1903) (finding sufficient evidence for the jury to find the defendant guilty of first degree murder via premeditation and deliberation); *id.* at 992 (concluding that "the evidence was also sufficient to justify the jury in finding that the defendant and his associates were engaged in an attempt to commit a felony . . . when they took the life of the deceased").

[27] Many courts in other jurisdictions agree with this conclusion. In the decisions cited below and others, the courts have declined to adopt the broad reading of the *Sullivan* dictum. *See, e.g., Rice v.*

(continued…)

reconsideration of this principle. Not only is this principle indefensible as a matter of the plain language and original meaning of the constitution, but it also fails as a matter of basic logic.

¶77 The sufficiency of the evidence on alternative means of committing a crime tells us nothing about the jury's unanimity on such means. If anything, the existence of evidence of both of two alternatives heightens the risk of a lack of unanimity.

¶78 Consider again the hypothetical murder case involving evidence of both poisoning and suffocation. Compare two alternative cases, one in which we have evidence of only one theory or means of committing the murder and one in which we have evidence of both. The jury returns a guilty verdict in both cases. In which case would we have a greater cause for doubting the jury's unanimity on the means by which the crime was committed? Surely the latter, in which there is sufficient evidence of both alternative means. In that case the likelihood of a split verdict—with some jurors finding murder by suffocation and others finding murder by poisoning—is obvious.

¶79 Such a split is also possible in a case in which the record evidence supports only one theory (but the prosecution argues both, and/or the jury instructions identify both). Members of the jury, after all, could become confused. Or they could vote for a verdict on a theory unsustained by any evidence at all. But the lack of evidence on an alternative theory makes the possibility of a lack of unanimity *less likely*. And this tells us that the requirement of sufficient evidence on two alternative theories has little or nothing to do with the requirement of unanimity.

---

*State*, 532 A.2d 1357, 1364 (Md. 1987) (citation omitted) (arguing that the *Sullivan* logic "requires unanimity only in the verdict, not in the rationale upon which the verdict is based," without including an additional requirement of sufficient evidence on all alternatives); *see also People v. Smith*, 906 N.E.2d 529, 537–38 (Ill. 2009); *State v. Elliott*, 987 A.2d 513, 520–21 (Me. 2010); *Davis v. State*, 313 S.W.3d 317, 342 (Tex. Crim. App. 2010); *State v. Johnson*, 627 N.W.2d 455, 459 (Wis. 2001).

¶80 If we were to seriously require unanimity as to distinct theories or means of committing a crime, it would not be enough to require sufficient evidence of both alternatives. We would require a special verdict form requiring the jury to make express findings on which of two theories or means it found sustained by the evidence. Our law has never done that, however. And our refusal to do so further supports the conclusion that our law does not require unanimity at the level of *theory* of a crime or means of fulfilling an element.[28]

### 3. The Burden of Establishing Prejudicial Error

¶81 It is true, of course, that "it is impossible to determine whether the jury agreed unanimously" on which of two alternative theories of a crime was accepted by a jury who issues a general verdict. *State v. Johnson,* 821 P.2d 1150, 1159 (Utah 1991). But that will hold regardless of whether there is sufficient evidence to support both theories, and perhaps more so when that is the case.

¶82 Uncertainty, moreover, is not a basis for reversal. Uncertainty counts against the appellant, who bears the burden of proof on appeal, and must overcome a presumption of regularity as to the record and decision in the trial court.[29] Thus, a lack of

---

[28] We need not and do not overrule the *Johnson* line of cases. We simply adopt a limited reading of these cases and decline to extend them to a case involving alternative theories that are not alternative elements of a crime.

[29] *See State v. Triptow,* 770 P.2d 146, 149 (Utah 1989) ("A previous judgment of conviction . . . is entitled to a presumption of regularity . . . ."); *Broderick v. Apartment Mgmt. Consultants, L.L.C.,* 2012 UT 17, ¶ 19, 279 P.3d 391 ("We recognize that appellants bear the burden of persuasion on appeal."). That presumption is further reinforced by the presumption of constitutionality. *See State v. Robison,* 2006 UT 65, ¶ 21, 147 P.3d 448 ("Under the presumption of regularity, 'Utah courts place the initial burden on the appellant, not on the state, to produce some evidence that the prior conviction was improper, attaching a presumption of

(continued…)

certainty in the record does not lead to a reversal and new trial; it leads to an affirmance on the ground that the appellant cannot carry his burden of proof.

¶83  Our cases identify a settled means of assessing the effect of a superfluous jury instruction. Such an instruction does not lead to automatic reversal. It simply opens the door for the appellant to carry the burden of showing that the unnecessary instruction affected the judgment below—that it was not *harmless*.[30]

¶84 Hummel's theory would have us turn this law on its head—by concluding that an unnecessary jury instruction leads to automatic reversal in a case in which there is no evidence to support it. That is not the law.

¶85  A jury verdict is a product of a substantial investment of public resources. It is entitled to ample deference on appeal. We cannot reverse it on the mere basis of uncertainty. Under our established case law, we may reverse on the basis of an unnecessary jury instruction only if the instruction is shown to be prejudicial (or in other words not harmless). And that forecloses Hummel's invitation for reversal whenever a *theory* is presented to the jury without any supporting evidence.

---

regularity, including a presumption of constitutionality, to the prior conviction.'" (citation omitted)).

[30] *See State v. Fisher*, 680 P.2d 35, 37 (Utah 1984) (finding only harmless error, and thus no need to "reverse a conviction even if there were erroneous instructions on [one] variation" of a "crime submitted to the jury" where "the evidence overwhelmingly supports a conviction under one variation"). *See also State v. Young*, 853 P.2d 327, 347 (Utah 1993) ("Even if defendant can show that the instructions given by the trial court were in a technical sense incorrect, he has not shown that the instructions prejudiced him. Only harmful and prejudicial errors constitute grounds for granting a new trial."); *State v. Johnson*, 774 P.2d 1141, 1146 (Utah 1987) ("[D]efendant does not contend that had his proposed instruction been given, the outcome of the trial would have been different, and indeed, nothing appears to indicate that the result would have been otherwise had the instruction been given.").

## III. SUFFICIENCY OF THE EVIDENCE

¶86 Hummel also challenges the sufficiency of the evidence to support the jury's verdict in this case. We assess this challenge in light of the above understanding of the Unanimous Verdict Clause.

¶87 Thus, we consider only whether there is credible evidence to sustain the *verdict*—the determination of guilt on each of the elements of the crime charged in each count against Hummel. We do not require sufficient evidence on alternative theories or means of committing each count of theft. It is enough that there is sufficient evidence on even one theory or means of proving theft on each count in question. In reviewing the sufficiency of evidence, moreover, "we 'assume that the jury believed the evidence'" and drew reasonable inferences supporting the verdict. *State v. Boyd*, 2001 UT 30, ¶16, 25 P.3d 985 (citation omitted).

¶88 We affirm under these standards. We hold that the State presented believable evidence to support a determination of guilt—of proof beyond a reasonable doubt on each of the elements of theft—on each of the counts against Hummel.

¶89 Hummel challenges the strength of the prosecution's evidence on the theory of theft by extortion. And he may be right to question the strength of the prosecution's case on this theory. But in Utah there is no separate crime called theft by extortion, and Hummel was not charged with such a crime. He was charged with *theft*. And the jury verdict on the counts of theft may be sustained with evidence of alternative theories of this crime—such as theft by deception—even if there is insufficient evidence of theft by extortion. *See supra* ¶ 87.

¶90 We affirm on that basis. We conclude that there was ample evidence that Hummel engaged in theft—that he "obtain[ed] or exercise[d] unauthorized control over the property of another with a purpose to deprive him thereof." *Id.* § 76-4-404. Specifically, we hold that there was sufficient evidence to sustain a determination by the jury that Hummel obtained or exercised unauthorized control over the property of each of his clients by acts of deception.

¶91 For four of the five counts against Mr. Hummel, there was evidence that he committed theft by deception by preventing his clients "from acquiring information likely to affect [their] judgment[s] in the transaction." UTAH CODE § 76-6-401(5) (setting forth means of engaging in "deception"). The evidence indicated that Hummel removed four of his clients' applications for appointed counsel from the clerk's desk before the court could rule on them. And the jury could reasonably have concluded that the court's disposition of these applications was "information likely to affect [their] judgment[s]" on the question whether to retain him privately. It was a fair inference, in fact, that that was Hummel's purpose in removing the applications. Alternative inferences could also be drawn from the evidence. But this was a fair one, and that is all that is necessary to sustain the jury verdict.

¶92 There was one other count on which there was no indication that Hummel had removed his client's application from the clerk's desk. But on this count there was evidence that Hummel encouraged his client to file an application overstating his annual income in order to ensure that he was denied counsel (after telling him that he did not qualify). As with the removal of applications, a jury could find that this prevented the client from discovering "information likely to affect [his] judgment." UTAH CODE § 76-6-401(5). And with this client there was also evidence that Hummel had in fact been formally appointed as a public defender, so the jury could have concluded that Hummel's assertion that the client did not qualify for a public defender was false and deceptive.

¶93 We accordingly find sufficient evidence to sustain guilty verdict on all of the counts against Hummel. And we affirm on that basis.

## IV. CONSTITUTIONAL RIGHT TO DEMAND THE NATURE AND CAUSE OF ACCUSATIONS

¶94 Hummel also challenges his convictions under article I, section 12 of the Utah Constitution. He says the prosecution initially alleged that Hummel talked his clients out of the public defender arrangement after it had been finalized, but shifted gears when it learned that no formal appointment had been made (as to

most of the clients at issue in this case). And he says that this deprived him of his right to "demand the nature and cause of the accusations against him" under the Utah Constitution. UTAH CONST. art. 1, § 12.

¶95 We reject this argument on preservation grounds. If Hummel had a gripe with the prosecution's change in the theory of its case he had an obligation to object and ask for a continuance. *See State v. Fulton*, 742 P.2d 1208, 1215 (Utah 1987). Yet he failed to raise any objection or ask for a continuance. And that failure is fatal. *Id.* at 1215–16 (explaining that "the failure of a defendant to seek a continuance negates any claim of surprise and amounts to a waiver of any claim of variance").

## V. "PROSECUTORIAL MISCONDUCT" IN INTRODUCING FALSE OR MISLEADING EVIDENCE AT THE PRELIMINARY HEARING AND TRIAL

¶96 Lastly, Hummel alleges "misconduct" on the part of the prosecution, asserting that his right to due process was infringed thereby. The alleged "misconduct" falls into three categories: (a) presentation of allegedly false hearsay statements at the preliminary hearing; (b) presentation of misleading or false testimony at trial; and (c) statements made in closing argument, which in Hummel's view were inaccurate and aimed at encouraging the jury to engage in speculation.

¶97 Hummel lumps these items together and labels them all "prosecutorial misconduct." In so doing, he glosses over his lack of preservation—his failure (on most of these points) to raise an objection at trial. And he seeks to sidestep the requirement of proof of obvious, prejudicial error—traditional "plain error"—on the arguments he failed to preserve.

¶98 Citing *State v. Emmett*, 839 P.2d 781 (Utah 1992), and *State v. Ross*, 2007 UT 89, 174 P.3d 628, Hummel says that acts of "prosecutorial misconduct" are reversible error so long as "they are harmful" (or in other words prejudicial). *Appellant's Brief* at 53. He identifies two broad categories of prosecutorial misconduct: (a) introducing evidence a prosecutor "knows or has reason to know is false," a category he traces to *State v. Doyle*, 2010 UT App 351, 245 P.3d 206; and (b) making statements in closing that "call

to the jurors' attention matters that they would not be justified in considering in reaching a verdict," a category he ties to *State v. Emmett*, 839 P.2d 781 (Utah 1992). *Id.*

¶99 The State responds by asserting that Hummel failed to preserve an objection to most of these acts of "misconduct." It asks us to affirm on the basis of "inadequate briefing" on Hummel's part—his failure to present a more extensive argument under the law of plain error.

¶100 The State acknowledges Hummel's reliance on *Ross* in support of his preferred "plain error standard for a misconduct claim." But it chides him for "presum[ing] the State maintains the burden of proof on appeal in that context without recognizing the unsettle[d] state of the law on the issue." To illustrate the unsettled state of the law, the State cites *State v. Clark*, 2014 UT App 56, 332 P.3d 761, and *State v. Cox*, 2012 UT App 234, ¶ 15 n.2, 286 P.3d 15 (Voros, J., concurring), which highlight the lack of clarity in our law as to "the harmlessness standard and who bears the burden of proof for unpreserved claims of prosecutorial misconduct in the plain error context." *Clark*, 2014 UT App 56, ¶ 31 n.7. And the State urges us to reject Hummel's position on appeal "as inadequately briefed" given his failure to address these nuances. *Appellee's Brief* at 63.

¶101 We recently noted the "tension in our previous cases" on the standard that applies in a case involving an unpreserved challenge to a prosecutor's questions eliciting material that should have been withheld from the jury. *See State v. Bond*, 2015 UT 88, ¶ 38 n.10, 361 P.3d 104. In the *Bond* case we considered a challenge to a prosecutor's "leading questions of a witness who claims a privilege against self-incrimination"—questions that had a tendency to inculpate the defendant while depriving him of his Confrontation Clause right of cross-examination. *Id.* ¶ 33. Yet we noted that the defense had failed to object to these questions. *Id.* ¶ 30. "Therefore," we held that "our disposition turn[ed] on whether the trial court plainly erred in allowing the prosecution to question [the witness] in this manner or whether [the defendant's] lawyers rendered ineffective assistance in failing to more for a mistrial based on the Confrontation Clause." *Id.*

¶102 Our *Bond* opinion acknowledged the above-noted line of cases suggesting a basis for direct review of alleged prosecutorial misconduct. *See id.* ¶ 38 (citing *Ross*, 2007 UT 89). But we also reiterated our commitment to the law of preservation—and to the set of well-established exceptions to the general rule requiring an objection at trial to preserve an argument for appeal (plain error, exceptional circumstances, and ineffective assistance of counsel). *See id.* ¶ 41 n.14 (establishing that "we have already announced that our 'preservation rule applies to every claim, including constitutional questions, unless a defendant can demonstrate that exceptional circumstances exist or plain error occurred'" (citation omitted)). And we "h[e]ld that unpreserved federal constitutional claims are not subject to a heightened review standard but are to be reviewed under our plain error doctrine." *Id.* ¶ 44.

¶103 In so holding, we emphasized that this rule "comports with the aims of preservation as expressed by the United States Supreme Court and this court." *Id.* ¶ 45. We noted, for example, "that under plain error review, the 'burden should not be too easy for defendants' and the standard of review should 'encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error.'" *Id.* (quoting *United States v. Dominguez*, 542 U.S. 74, 82 (2004)). "And because in our adversarial system the responsibility to detect errors lies with the parties and not the court," we explained that "preservation rules encourage litigants to grant the district court the first opportunity to rule on an issue." *Id.*

¶104 With this in mind, we proceeded in *Bond* to consider whether the *trial court committed plain error* "in permitting the prosecutor to ask [the witness] leading questions." *Id.* ¶ 48. We asked, in other words, not whether the prosecutor's questions were improper, but whether the impropriety "should have been obvious to the trial court." *Id.*

¶105 This same approach is appropriate here. On points on which Hummel raised no objection at trial, our review is for plain

error.[31] And our plain error analysis asks not whether *the prosecutor* made a misstep that could be characterized as *misconduct*, but whether the *trial court* made an "obvious" error in its decision. *See State v. Thornton*, 2017 UT 9 ¶ 49, --P.3d-- (noting that generally appellate courts "ask only whether the trial court committed a reversible error in resolving a question presented for its determination" rather than "review[ing] the trial record in a search for an idealized paradigm of justice").

¶106 Our *Ross* line of "prosecutorial misconduct" cases is in some "tension" with the above. *See Bond*, 2015 UT 88, ¶ 38 n.10. In *Ross* and elsewhere we have suggested that *a prosecutor's* error may constitute a "'standalone basis for direct review of the actions of prosecutors.'" *Id*. ¶ 23 n.5 (quoting *State v. Larrabee*, 2013 UT 70, ¶ 65, 321 P.3d 1136 (Lee, J., dissenting)). Yet in *Bond* we declined to "endors[e]" that approach. *Id*. And we emphasized the need to focus our analysis on *district court decisions* in order to preserve the lines and policies protected by the law of preservation.

¶107 We extend *Bond* a step further here. We do so by concluding that plain error review considers the plainness or obviousness of the district court's error (not the prosecutor's). That follows from the nature of our appellate jurisdiction: Appellate courts review the decisions of lower courts. We do not review the actions of counsel—at least not directly.

¶108 That is not to say that the extent of a prosecutor's "misconduct" is irrelevant to our analysis. The propriety of a lower court decision may turn, in part, on the egregiousness of an attorney's misstep. If a prosecutor asks a question aimed at eliciting material that is both highly prejudicial and clearly inadmissible, that may suggest that the trial judge was plainly wrong in not intervening to block its admission *sua sponte*. The more plain or obvious the prosecutor's misstep, the greater the likelihood (other things being equal) that an appellate court would find plain error in a judge's failure to step in to stop it. That

---

[31] Hummel makes no exceptional circumstances argument and does not allege ineffective assistance of counsel.

kind of thinking may be behind our assertion that "prosecutorial misconduct" can constitute plain error.[32]

¶109 It goes too far, however, to suggest that every misstep of a prosecutor should be corrected by the trial judge—or in other words that it is always plain error by the judge not to step in when the prosecutor oversteps his bounds. At least occasionally, the defense may be aware of a prosecutor's misstep but choose not to highlight it through an objection. Our adversary system, moreover, relies generally on objections from parties to police the admissibility of evidence. We do not require or even expect our trial judges to exercise their own independent judgment on the question of admissibility.[33]

¶110 The same goes for statements in closing argument. In closing counsel have "considerable latitude" in the points they may raise. *State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989). And the law recognizes the prerogative of opposing counsel to swallow their tongue instead of making an objection that might have the risk of highlighting problematic evidence or even just

---

[32] *See* S*tate v. Ross*, 2007 UT 89, ¶ 53, 174 P.3d 628 (asking "whether the *State's* remarks during closing arguments constitute prosecutorial misconduct" and "[a]pplying our plain error standard of review" (emphasis added)); *id.* (concluding that "it was not plain error for the *trial court* not to have intervened when the State stretched evidence" (emphasis added)).

[33] *See State v. King*, 2006 UT 3, ¶ 14, 131 P.3d 202; *Polster v. Griff's of Am., Inc.*, 520 P.2d 745, 747 (1974) (citing the general rule that "the trial court has no duty to question each piece of evidence offered . . . . It should not assume the role of advocate and on its own motion, without request therefor, limit, comment upon, qualify, or strike evidence offered by the parties. These are the basic functions of trial counsel in our adversary system of justice and underlie the rationale of the contemporaneous objection rule").

annoying the jury.[34] With this in mind, we cannot properly conclude that every misstep of counsel in closing amounts to plain error—subject only to proof of prejudice. We must ask first whether counsel's missteps were so egregious that it would be plain error *for the district court* to decline to intervene *sua sponte*.

¶111 For these reasons we repudiate the statements in *Ross* and related cases in which we have identified "prosecutorial misconduct" as a standalone basis for independent judicial review. We hold instead that the law of preservation controls here as in other circumstances. Thus, absent an objection at trial, we review the district court's actions under established exceptions to the law of preservation (here, plain error).

¶112 A contrary holding would open the door to the use of the "prosecutorial misconduct" label as an end-run around the law of preservation (and the doctrine of plain error review). Most every problematic turn in the proceedings in a criminal trial could be reframed as a result of a prosecutorial misstep. An erroneous jury instruction, for example, could be blamed on the prosecutor who was involved in drafting it. The same goes for presenting inadmissible evidence or asking leading questions to a witness who has invoked the Fifth Amendment (as in *Bond*). Appellate review of these and other proceedings at trial must be subject to the law of preservation. The call of "prosecutorial misconduct" cannot override our usual standards of review in this area.

---

[34] *State v. Houston*, 2015 UT 40, ¶ 76, 353 P.3d 55, *as amended* (Mar. 13, 2015) (emphasizing that defense retains the discretion not to object to arguments made at closing unless a prosecutor's argument is "so inflammatory that 'counsel's only defensible choice was to interrupt those comments with an objection'" (citation omitted)); *State v. Bedell*, 2014 UT 1, ¶ 25, 322 P.3d 697 (refusing to find that counsel was ineffective for failing to object to a prosecutor's closing argument when not doing so was "a legitimate strategic decision").

¶113 In this case, we therefore ask not whether the prosecutor made missteps but whether the trial judge committed reversible error. And we distinguish the grounds raised on appeal that were preserved from those that were not, assessing the latter under plain error review.

## A. Misleading Hearsay Evidence at the Preliminary Hearing

¶114 Hummel complains that the district court admitted misleading hearsay evidence at the preliminary hearing. The out-of-court statements in question were from Hummel's clients, who stated they believed Hummel had been appointed as a public defender before they agreed to enter into a private retention agreement with him. These statements came in under Utah Rule of Evidence 1102(b)(8)(B). That rule allows hearsay in "criminal preliminary examinations" if it is "a statement of a declarant that is written, recorded, or transcribed verbatim which is: . . . (B) pursuant to a notification to the declarant that a false statement made therein is punishable." *Id.* On appeal, Hummel argues that these statements were "false," and that "[t]he prosecutor could have determined" their falsity "by simply consulting the district court's files." *Appellant's Brief* at 50. And he challenges the admission of this evidence in the preliminary hearing on that basis.

¶115 We affirm. Hummel failed to preserve an objection to the admission of these statements at the preliminary hearing. He objected only to the admission of a part of one of the statement—a part that was unconnected to the question of whether he had been appointed as counsel. And in his motion to quash the bindover decision he did not assert that the admission of false statements was a basis for overturning the bindover decision. So his argument fails for lack of preservation—and for lack of any argument for reversal on grounds of plain error.

## B. Misleading Testimony at Trial

¶116 Hummel next complains of the admission at trial of testimony that Hummel had been appointed to represent one of his clients (Callies). He asserts that this testimony was misleading—and contradicted by other evidence. And he asks for

reversal on the basis of "prosecutorial misconduct" in presenting this testimony.

¶117 The question for our review is not whether to question the prosecutor's actions. It is whether the district court erred in admitting this evidence. And here we begin by noting a lack of preservation. Hummel never objected to the admission of the testimony in question. That is fatal to his argument on appeal. Hummel cannot establish plain error. His position, as above, is to question the evidence that was admitted by countering it with other evidence in the record. That is insufficient.

¶118 It is not error—much less plain error—for the court to admit evidence (without objection) that is contradicted by other evidence in the record. Such contradictions are commonplace. And they are a significant reason why cases go to trial. We affirm because we cannot fault the district court for admitting evidence that was not objected to just because other evidence in the record seems to cut the other way.

## C. Statements in Closing Argument

¶119 That leaves the question of the prosecution's allegedly misleading statements in closing argument. Hummel points to several statements the prosecutor made in closing that were allegedly inaccurate and encouraged the jury to engage in speculation. Again, however, there is a preservation problem. For all but one of the statements in question, Hummel raised no objection at trial. And none of those statements was so egregiously false or misleading that the judge had an obligation to intervene by raising an objection *sua sponte*.[35]

---

[35] Such a course is often a perilous one for a trial judge. A judge who interrupts a closing argument to question the basis for a lawyer's statement risks treading on the toes of opposing counsel—of highlighting a point that counsel may prefer to ignore, in the hopes that it may go unnoticed or at least minimized by the jury. So a judge who does so must be certain that the attorney's statement is both highly prejudicial and

(continued…)

¶120 Hummel points to one statement in closing that he objected to at trial. But the trial judge sustained the objection. And Hummel makes no attempt to argue that the judge's response to the objection was inadequate—that a curative instruction was required, or a mistrial. That is also fatal under the law of preservation.[36] If Hummel believed that the sustaining of his objection was insufficient, he had a duty to ask the judge to do more. Where the judge gave him everything he asked for (sustaining his objection), he is in no position to ask for more on appeal.

## V. CONCLUSION

¶121 Mr. Hummel raises important, unresolved questions of state constitutional law in this appeal. But he has failed to identify a basis for reversal of his convictions. We affirm.

———————

obviously beyond the bounds of the "considerable latitude" of counsel at closing to "discuss fully from their viewpoints the evidence and the inferences and deductions arising therefrom." *State v. Tillman*, 750 P.2d 546, 560 (Utah 1987). We are in no position to question the trial judge's decision here to sit silent in the absence of an objection.

[36] *See State v. Low*, 2008 UT 58, ¶ 17, 192 P.3d 867 ("Utah courts require specific objections in order to bring all claimed errors to the trial court's attention to give the court an opportunity to correct the errors if appropriate." (citation omitted)); *State v. Briggs*, 2006 UT App 448, ¶ 4, 147 P.3d 969 (concluding that a defendant failed to preserve an objection because he did not "request any specific relief" (citation omitted)).