2019 UT App 206

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
PHILBERT EUGENE ALIRES,
Appellant.

Opinion
No. 20181033-CA
Filed December 19, 2019

Third District Court, Salt Lake Department
The Honorable Adam T. Mow
No. 171908080

Ann M. Taliaferro and Staci Visser, Attorneys
for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

HAGEN, Judge:

¶1 Philbert Eugene Alires was charged with six counts of aggravated sexual abuse of a child—two counts for conduct toward his youngest daughter and four counts for conduct toward one of his daughter's friends (the friend). A jury convicted Alires on two counts, one for each alleged victim, and acquitted him of the remaining four counts. We agree with Alires that his trial counsel was constitutionally ineffective in failing to request an instruction requiring the jury to reach a unanimous verdict with respect to each act for which he was convicted. Accordingly, we vacate his convictions and remand for further proceedings.

BACKGROUND[1]

¶2      One afternoon, Alires and his wife (the mother) hosted a party for their youngest daughter's eleventh birthday. The daughter invited two of her guests—the friend and another friend (the other friend)—to a sleepover that night. As the evening progressed, the daughter, the friend, and the other friend joined others in the living room to play a video game called "Just Dance."

¶3      Later that night, after everyone else had left, Alires and the mother got into a loud argument that the daughter, the friend, and the other friend overheard. The daughter appeared visibly upset and "started tearing up because her parents were fighting." Both Alires and the mother could tell that the girls overheard and were affected by the argument.

¶4      Alires and the mother went to their bedroom and discussed how they could "try and make [the daughter] happy." They decided that Alires would join the girls in the living room and "try to lighten the mood." Alires testified that he can generally make the daughter happy by "wrestling" with her and her friends or other family members because it "usually ends up being a dog pile" on Alires and it "usually brings the kids together and usually changes the mood." While Alires went to the living room, the mother stayed behind to change into her pajamas.

¶5      According to the friend, Alires went into the living room after the argument and "started trying to dance with [them]"

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Reigelsperger*, 2017 UT App 101, ¶ 2 n.1, 400 P.3d 1127 (cleaned up).

and "lighten the mood" because "the fight wasn't very fun for anybody." While they were dancing, Alires "put his hand on [the friend's] waist and kind of like slid it down, so [she] just sat down because [she] felt really uncomfortable." Alires then "tried dancing with [her] again and he . . . touched around [her] butt," though he "was kind of sneaky about it" as if he was "trying to make it look like it wasn't happening." On direct examination, the State asked the friend, "[H]ow does that get accomplished?" She responded, "I'm not sure. He just did it."

¶6 Feeling uncomfortable, the friend sat down on the couch next to the daughter. Alires sat down between the two and "started tickling [the daughter]." The friend testified that, while Alires tickled the daughter, "it looked like he was touching like in her inner thigh, and like moved up to her crotch area." According to the friend, "it was really not tickling, it was more like grabbing and grosping [sic]." This lasted "probably 15 to 30 seconds." Then, Alires turned to the friend and said, "I'm going to tickle you now." The friend told Alires she did not feel well and said, "[P]lease don't." But Alires started tickling near her "ribcage and then touched [her] breast area" and then he "started tickling [her] inner thighs and did the same thing that he did to [the daughter]." The friend testified, "[H]e slid his hand up to my vagina and started like grabbing, and like grosping [sic], I guess" for "[p]robably about seven to 10 seconds."

¶7 According to the friend, when Alires got up from the couch, the daughter asked, "[D]id he touch you?" The friend said, "[Y]eah. And he touched you, because I kind of saw it." The daughter "was like, yeah, can we just go to my room?"

¶8 According to the mother, she entered the living room about sixty seconds after Alires and told everyone that it was time to go to bed. The friend testified that it had been "probably about three minutes," during which time Alires touched her buttocks "twice," her breasts "twice," and her vagina "[a]bout

four times," in addition to touching the daughter's thigh and vagina.

¶9　Both the daughter and the other friend testified at trial that Alires did not touch anyone inappropriately and that they were only wrestling and tickling.

¶10　A few days after the birthday party, the daughter decided to report the friend's claim to a school counselor. The daughter went to the counselor's office in tears and when the counselor asked her if "something happen[ed] over the weekend" she "nodded her head yes." The daughter "wouldn't speak to [the counselor]" but told him that she was "going to go get a friend." The daughter then left and returned to the counselor's office with the friend. According to the counselor, the friend told him that Alires had touched both the daughter and the friend on "[t]he lower area and the breasts," although "they first described it as tickling . . . whatever that means." He also testified that the daughter "agreed to where the touching happened." At trial, the daughter testified that she told the counselor only what the friend had told her.

¶11　The State charged Alires with six counts of aggravated sexual abuse of a child without distinguishing the counts. At trial, the jury was instructed that four of those counts were for conduct perpetrated against the friend and two of those counts were for conduct perpetrated against the daughter. During closing argument, the prosecutor explained that, based on the friend's testimony, the jury could "ascertain six counts of touching of [the friend]" and that the State was "charging four" of those touches. The prosecutor also cited the friend's testimony that she saw Alires touch the daughter on her "inner thigh" and "on her vagina." The prosecutor further explained that "any one of those touchings qualifies for each of the counts. One for one. One touch for one count. And . . . it has to be just on the vagina, just on the butt, or just on the breast. It can be any combination."

¶12 Although both parties submitted proposed jury instructions, neither side asked the court to instruct the jury that it must be unanimous as to the specific act underlying each count of conviction. During its deliberations, the jury sent a question to the court asking, "Can we please have a clarification on how the counts work? We don't understand how to weigh each count when they are all the same. Not sure what they mean." Alires's trial counsel still did not request a specific unanimity instruction. Instead, with consent from both parties, the court referred the jury to instructions it had already received. The jury convicted Alires on one count of aggravated sexual abuse of a child involving the friend and one count involving the daughter.

¶13 After the jury returned its verdict and prior to sentencing, Alires filed a motion to arrest judgment and for a new trial due to, among other things, "fatal errors in the jury instructions and verdict forms." Trial counsel argued that the jury instructions were "fatally erroneous in failing to require the jury to find a unanimous verdict." The district court denied the motion and imposed two indeterminate terms of six-years-to-life in prison to run concurrently.

¶14 Alires appeals.

ISSUE AND STANDARD OF REVIEW

¶15 Alires argues that his trial counsel was constitutionally ineffective for failing to request a jury instruction that required the jurors to unanimously agree to the specific act at issue for each count of aggravated sexual abuse of a child.[2] Alires further

2. Alires did not preserve the underlying jury instruction issue for appeal, because he raised it for the first time in a post-trial motion. *State v. Fullerton*, 2018 UT 49, ¶ 49 n.15, 428 P.3d 1052 (reaffirming that "an objection that could have been raised at
(continued…)

argues that, due to the lack of such an instruction, we "cannot be assured the jury was unanimous" as to which specific acts formed the basis for his conviction. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Bonds*, 2019 UT App 156, ¶ 20, 450 P.3d 120 (cleaned up).[3]

---

(…continued)

trial cannot be preserved in a post-trial motion"). Therefore, he must establish one of the three exceptions to the preservation requirement: plain error, ineffective assistance of counsel, or exceptional circumstances. *See State v. Johnson*, 2017 UT 76, ¶ 19, 416 P.3d 443. In addition to arguing ineffective assistance of counsel, Alires also asks us to review this issue under plain error. But because Alires's trial counsel proposed jury instructions that contained the same alleged infirmity, trial counsel invited the error and we are precluded from reviewing it under the plain error exception to the preservation requirement. *State v. Moa*, 2012 UT 28, ¶¶ 23–27, 282 P.3d 985 (explaining that the invited error doctrine precludes plain error review).

3. Alires also raises issues concerning the sufficiency of the evidence of sexual intent and the absence of a jury instruction defining "indecent liberties." Because we vacate Alires's convictions on other grounds and it is uncertain whether these issues will arise again on remand, *see infra* note 7, we do not "exercise our discretion to address those issues for purposes of providing guidance on remand." *State v. Low*, 2008 UT 58, ¶ 61, 192 P.3d 867; *see also State v. Barela*, 2015 UT 22, ¶ 35, 349 P.3d 676 (concluding that "[w]e need not and do not reach the factual question of the sufficiency of the evidence" when reversing on the basis of ineffective assistance of counsel relating to the jury instructions).

ANALYSIS

¶16    Alires argues that his trial counsel was ineffective for failing to request an instruction requiring the jury to unanimously agree on the specific act committed for each count of conviction. "To demonstrate ineffective assistance of counsel, [a defendant] must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense." *State v. Squires*, 2019 UT App 113, ¶ 25, 446 P.3d 581 (cleaned up); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). We agree with Alires that his trial counsel performed deficiently and that counsel's deficient performance prejudiced his defense.

A.    Deficient Performance

¶17    To overcome the high level of deference we give to trial counsel's performance, Alires "must show that counsel's representation fell below an objective standard of reasonableness when measured against prevailing professional norms." *See State v. Popp*, 2019 UT App 173, ¶ 26 (cleaned up); *see also Strickland*, 466 U.S. at 687–88. Under the circumstances of this case, it was objectively unreasonable for trial counsel to propose instructions that did not require the jury to be unanimous as to the specific acts supporting each count of conviction.

¶18    The right to a unanimous verdict in criminal cases is guaranteed by Article 1, Section 10 of the Utah Constitution (the Unanimous Verdict Clause). "The Article I, section 10 requirement that a jury be unanimous is not met if a jury unanimously finds only that a defendant is guilty of a crime." *State v. Saunders*, 1999 UT 59, ¶ 60, 992 P.2d 951. Instead, "[t]he Unanimous Verdict Clause requires unanimity as to each count of *each distinct crime charged* by the prosecution and submitted to the jury for decision." *State v. Hummel*, 2017 UT 19, ¶ 26, 393 P.3d 314 (emphasis in original). For example, a verdict would not be valid "if some jurors found a defendant guilty of a robbery

committed on December 25, 1990, in Salt Lake City, but other jurors found him guilty of a robbery committed January 15, 1991, in Denver, Colorado, even though all jurors found him guilty of the elements of the crime of robbery and all the jurors together agreed that he was guilty of some robbery." *Saunders*, 1999 UT 59, ¶ 60. "These are distinct counts or separate instances of the crime of robbery, which would have to be charged as such." *Hummel*, 2017 UT 19, ¶ 26.

¶19 The constitutional requirement that a jury must be unanimous as to distinct counts or separate instances of a particular crime "is well-established in our law." *Id.* ¶ 30. Indeed, this requirement was applied in the closely analogous *Saunders* case in 1999. In *Saunders*, the Utah Supreme Court considered whether jurors must be unanimous as to the particular act or acts that form the basis for a sexual abuse conviction. 1999 UT 59, ¶¶ 9–11. The jury had been instructed that there was "no requirement that the jurors be unanimous about precisely which act occurred or when or where the act or acts occurred." *Id.* ¶ 58 (cleaned up). The court held that, "notwithstanding a clear constitutional command and applicable case law, the instruction does not set out any unanimity requirement at all." *Id.* ¶ 62. The alleged child victim had testified that at least fifteen different acts of touching occurred—some in which the defendant had been applying Desitin ointment to her buttocks and vaginal area and some in which he had not. *Id.* ¶ 5. Without a proper unanimity instruction, "some jurors could have found touchings without the use of Desitin to have been criminal; others could have found the touchings with Desitin to have been criminal; and the jurors could have completely disagreed on when the acts occurred that they found to have been illegal."[4] *Id.* ¶ 65. Because the

---

4. "[B]ecause time itself is not an element of an offense, it is not necessary that the jurors unanimously agree as to just when the criminal act occurred." *State v. Saunders*, 1999 UT 59, ¶ 60, 992

(continued…)

"jury could have returned a guilty verdict with each juror deciding guilt on the basis of a different act by [the] defendant," the court held that "it was manifest error under Article I, section 10 of the Utah Constitution not to give a unanimity instruction." *Id.* ¶ 62.

¶20    Our supreme court recently reinforced these principles in *Hummel*. In that case, the court distinguished between *alternative factual theories* (or methods or modes) of committing a crime for which a jury need not be unanimous and *alternative elements* of a crime for which unanimity is required. *Hummel*, 2017 UT 19, ¶ 53. Hummel was charged with the crime of theft. *Id.* ¶ 1. Under Utah law, a person commits theft if he "obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." Utah Code Ann. § 76-6-404 (LexisNexis 2017). Subsequent sections of the Utah Code explain that a person is guilty of theft if he obtains or exercises control over the property "by deception," *id.* § 76-6-405, or "by extortion," *id.* § 76-6-406. But the Utah Supreme Court explained that "[t]heft by deception and theft by extortion are not and cannot logically be separate offenses." *Hummel*, 2017 UT 19, ¶ 21. "If they were, Hummel could be charged in separate counts and be convicted on both." *Id.* Because the method of obtaining or exercising control over the property is not an alternative *actus reus* element of the crime, jury unanimity at that level is not required. *Id.* ¶ 61.

_____

(…continued)

P.2d 951. "Thus, a jury can unanimously agree that a defendant was guilty of a particular act or acts that constituted a crime even though some jurors believed the crime occurred on one day while the other jurors believed it occurred on another day." *Id.* In other words, if all jurors agree that a defendant committed a particular act, it is immaterial if some jurors think that the act occurred on a Saturday and others believe it occurred on a Monday.

¶21    In contrast to *Hummel*, where deception and extortion are merely "exemplary means" of satisfying the obtaining or exercising control element of the single crime of theft, *id.*, each unlawful touch of an enumerated body part (or each unlawful taking of indecent liberties) constitutes a separate offense of sexual abuse of a child under Utah Code section 76-5-404.1(2). This is illustrated by the fact that a defendant can be charged in separate counts and be convicted for each act that violates the statute. *See State v. Suarez*, 736 P.2d 1040, 1042 (Utah Ct. App. 1987) (holding that the defendant's acts of placing his mouth on the victim's breasts and then placing his hand on her vagina were "separate acts requiring proof of different elements and constitute separate offenses"). Unlike the theft statute in *Hummel*, the sexual abuse of a child statute "contains alternative *actus reus* elements by which a person could be found" guilty of sexual abuse. *See Hummel*, 2017 UT 19, ¶ 61. Those alternative elements are touching "the anus, buttocks, pubic area, or genitalia of any child, the breast of a female child, or otherwise tak[ing] indecent liberties with a child," Utah Code Ann. § 76-5-404.1(2), each of which constitutes a distinct criminal offense.

¶22    Here, Alires was charged with six counts of aggravated sexual abuse of a child based on distinct touches prohibited by the statute. The information charged Alires with six identically-worded counts of aggravated sexual abuse of a child without distinguishing the counts by act or alleged victim. At trial, the friend testified that Alires unlawfully touched her at least six times and unlawfully touched the daughter twice. In closing, the State argued that the jury could convict Alires on four counts based on any of the six alleged touches of the friend in "any combination." Similarly, the State did not identify which alleged touch of the daughter related to which count. Once the State failed to elect which act supported each charge, the jury should have been instructed to agree on a specific criminal act for each charge in order to convict. *See State v. Santos-Vega*, 321 P.3d 1, 18 (Kan. 2014) (holding that "either the State

must have informed the jury which act to rely upon for each charge during its deliberations or the district court must have instructed the jury to agree on the specific criminal act for each charge in order to convict"); *see also State v. Vander Houwen*, 177 P.3d 93, 99 (Wash. 2008) (en banc) (noting that "[t]o ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt" (cleaned up)).

¶23　Despite the State's failure to elect which acts it relied upon for each charge, trial counsel failed to request a proper instruction. As a result, the jury was never instructed that it must unanimously agree that Alires committed the same unlawful act to convict on any given count. Without such an instruction, some jurors might have found that Alires touched the friend's buttocks when dancing, while others might have found that he touched the friend's breast while tickling. Or the jury might have unanimously agreed that all of the touches occurred, but some might have found that Alires had the required intent to gratify or arouse sexual desires only while trying to dance with the friend, while others might have found that he only had sexual intent when he tickled the friend. In other words, the jurors could have completely disagreed on which acts occurred or which acts were illegal. *See Saunders*, 1999 UT 59, ¶ 65. Where neither the charges nor the elements instructions link each count to a particular act, instructing the jury that it must agree as to which criminal acts occurred is critical to ensuring unanimity on each element of each crime.[5]

---

5. The instructions informed the jury that, "[b]ecause this is a criminal case, every single juror must agree with the verdict before the defendant can be found 'guilty' or 'not guilty.'" This instruction is plainly insufficient. The constitutional requirement

(continued…)

¶24 It was objectively unreasonable for Alires's trial counsel to propose jury instructions that did not require unanimity as to the specific act that formed the basis of each count resulting in conviction. Although no prior Utah appellate decisions have applied the Unanimous Verdict Clause to a case where a defendant is charged with multiple counts of the same crime, trial counsel is not "categorically excused from failure to raise an argument not supported by existing legal precedent." *State v. Silva*, 2019 UT 36, ¶ 19. In any event, it should have been readily apparent that, although *Saunders* involved a prosecution in which the defendant was charged with and convicted of a single count of sexual abuse that could have been based on any one of a number of separate acts, its holding applies with equal force to a case such as this where a defendant is charged with multiple counts of sexual abuse, each of which could have been based on any one of a number of separate acts.

¶25 The State suggests that a reasonable trial counsel may have had strategic reasons for not requesting a proper unanimity instruction. While it is true that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *Strickland v. Washington*, 466 U.S. 668, 690 (1984), here trial counsel candidly admitted that the failure to request a proper unanimity instruction was "not due to tactical reasons, but mistaken oversight." Had trial counsel properly investigated the governing law, it would have been apparent that *Saunders* required the court to instruct the jury that it must agree on the specific criminal act for each charge in order to convict. Moreover, we disagree with the State's theory that a reasonable defense attorney could have concluded that "further clarification would have increased the likelihood of conviction." By failing to require juror unanimity as to each

---

(…continued)

of unanimity "is not met if a jury unanimously finds only that the defendant is guilty of a crime." *Saunders*, 1999 UT 59, ¶ 60.

underlying act, the instructions—coupled with the prosecutor's closing argument—effectively lowered the State's burden of proof. *See State v. Grunwald*, 2018 UT App 46, ¶ 42, 424 P.3d 990, (holding that "no reasonable trial strategy would justify trial counsel's failure to object to instructions misstating the elements of accomplice liability in a way that reduced the State's burden of proof"), *cert. granted*, 429 P.3d 460 (Utah 2018). Under these circumstances, failure to request such an instruction fell below an objective standard of reasonableness.

B.    Prejudice

¶26    Having established that trial counsel performed deficiently by failing to request a proper unanimity instruction, Alires must show that he was prejudiced by that deficient performance. *Strickland*, 466 U.S. at 687. To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Therefore, we consider whether Alires has shown a reasonable likelihood that a juror unanimity instruction would have led to a more favorable result.[6] *See State v. Evans*,

---

6. Citing *State v. Hummel*, 2017 UT 19, 393 P.3d 314, the State argues that "defendants challenging a verdict under the Unanimous Verdict Clause must affirmatively prove that the jury was not unanimous." In *Hummel*, the court stated that "a lack of certainty in the record does not lead to a reversal and new trial; it leads to an affirmance on the ground that the appellant cannot carry his burden of proof." *Id.* ¶ 82. But the *Hummel* court was addressing how to assess the prejudicial effect of "a superfluous jury instruction," that is, a jury instruction that includes an alternative theory that was not supported by sufficient evidence at trial. *Id.* ¶¶ 81–84. It does not speak to the

(continued…)

2001 UT 22, ¶ 16, 20 P.3d 888 (reviewing for plain error a defendant's challenge to the trial court's failure to provide a juror unanimity instruction and explaining that a "defendant must demonstrate . . . that the error should have been obvious to the trial court, and that the error was of such a magnitude that there is a reasonable likelihood of a more favorable outcome for the defendant"); *State v. Saunders*, 1999 UT 59, ¶¶ 57, 65, 992 P.2d 951 (same); *see also State v. McNeil*, 2016 UT 3, ¶ 29, 365 P.3d 699 (explaining that "the prejudice test is the same whether under the claim of ineffective assistance or plain error").

¶27 To determine whether the defendant has shown a reasonable probability of a more favorable outcome, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. 668, 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.*; *see also Saunders*, 1999 UT 59, ¶¶ 5, 13, 57, 65 (holding that "factual issues in the case"— including the "conflicting, confused," and "obviously . . . coached" testimony of the alleged victim and the absence of other witnesses—created a reasonable likelihood that a proper unanimity instruction would have resulted in "a more favorable outcome for the defendant").

¶28 Here, the evidence supporting Alires's guilt was not overwhelming. The evidence was conflicting both as to which acts occurred and as to Alires's intent. The friend testified to eight separate touchings that allegedly occurred during a sixty-second to three-minute period in full view of all three girls in the room. The friend was the only person to testify that Alires unlawfully touched her and the daughter. Both the daughter and

---

(…continued)
standard for showing prejudice where the jury is not properly instructed on the unanimity requirement.

the other friend testified that no inappropriate touching occurred. Given the conflicting evidence, there is a reasonable probability that the jury did not unanimously agree that the same two acts occurred.

¶29    In addition, even if the jury fully accepted the friend's testimony that all eight touches occurred, the surrounding circumstances were sufficiently ambiguous that members of the jury could have easily reached different conclusions as to which acts were done with the required sexual intent. Although direct evidence of the intent to gratify or arouse a sexual desire is not required, *see In re G.D.B.*, 2019 UT App 29, ¶ 21, 440 P.3d 706, Alires, the mother, and even the friend testified that Alires went to the living room to "tickle" and "wrestle" with the girls with the intent to "lighten the mood." Given this evidence, some jurors may have found that the touches while tickling were innocent or inadvertent and that Alires had the intent to gratify or arouse sexual desires only when he slid his hand down to the friend's buttocks in a "sneaky" way while dancing. Others may have concluded touching one particular body part while tickling the friend or the daughter evidenced sexual intent, although they may have disagreed as to which body part that was. Where the evidence is so readily subject to different interpretations, "we are not persuaded that the jury would have unanimously convicted had the error not existed." *See Saunders*, 1999 UT 59, ¶ 65.

¶30    This is particularly true given the prosecutor's statements in closing argument and the jury's note expressing confusion over how to treat the various counts. The State told the jury in closing argument that any of the alleged acts against a particular victim could support any of the charges relating to that victim. Further, the elements instructions were identical for each of the six counts, with the exception of substituting the friend's initials for counts one through four and the daughter's initials for counts five and six. And during its deliberations, the jury expressed confusion over how to deal with the various counts,

asking the court, "Can we please have a clarification on how the counts work? We don't understand how to weigh each count when they are all the same. Not sure what they mean." The jury's question shows that the absence of a proper unanimity instruction had a palpable impact on the jury deliberations and undermines our confidence in the jury's verdict. *McNeil*, 2016 UT 3, ¶ 30. We therefore conclude that Alires was prejudiced by trial counsel's failure to request a juror unanimity instruction.

## CONCLUSION

¶31 We conclude that trial counsel performed deficiently when he did not request an instruction regarding juror unanimity and that this deficient performance was prejudicial to Alires's defense. Accordingly, we vacate Alires's convictions and remand for further proceedings.[7]

---

7. Ordinarily, a defendant who prevails on an ineffective assistance of counsel claim is entitled to a new trial. *See State v. Hales*, 2007 UT 14, ¶ 68, 152 P.3d 321. But where the counts of conviction cannot be distinguished from the counts on which the defendant was acquitted, a retrial may be prohibited by the Double Jeopardy Clause. *See, e.g., Dunn v. Maze*, 485 S.W.3d 735, 748–49 (Ky. 2016) (collecting state and federal cases holding that a mixed verdict on identically-worded counts forecloses a retrial). We express no opinion on the merits of the double-jeopardy issue, which will not be ripe unless and until the State seeks a retrial.