2021 UT App 79

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ALEX CHRISTOPHER MENDOZA SR.,
Appellant.

Opinion
No. 20200068-CA
Filed July 22, 2021

Third District Court, West Jordan Department
The Honorable Dianna Gibson
No. 181403365

Herschel Bullen, Attorney for Appellant

Simarjit S. Gill and Heather Lindsay, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGE GREGORY K. ORME and SENIOR JUDGE KATE APPLEBY
concurred.[1]

MORTENSEN, Judge:

¶1      An urgent search by police for an alleged assault victim
came to an abrupt halt at Alex Christopher Mendoza Sr.'s
residence. Standing on Mendoza's porch before a closed front
door, police endured Mendoza's barrage of profanity and
demands to get off his property. When Mendoza finally
emerged, police arrested him, setting him on the road to trial
where he faced a single charge for obstruction of justice. At trial,
Mendoza's counsel failed to either request an instruction

_____

1. Senior Judge Kate Appleby sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

explaining that the jury needed to unanimously agree on the specific statutory grounds for conviction or request a special verdict form that would have required the jury to agree on and indicate which specific act Mendoza performed to satisfy all the elements of the crime with which he was charged. After being convicted, Mendoza now appeals. We reverse and remand for a new trial.

## BACKGROUND[2]

¶2 Responding to various 911 calls reporting a young man violently assaulting a young woman, police rushed to Mendoza's home searching not only for the assailant, but also for the victim. On arrival, police found—consistent with the dispatcher's description—a young woman, who promptly ran into the house, and a young man, who began to yell at the officers.

¶3 Amid the ruckus, Mendoza and his wife emerged from the house, and Mendoza joined the young man—his son—in yelling and swearing at the officers. After his son was arrested, Mendoza continued to prowl his front porch, yelling, "[F]uck you," "[G]et the fuck off my property," "[G]et the fuck off my yard," and "[F]uck off" before retreating into his house.

¶4 In an attempt to advance the investigation of the assault one officer approached the door, which Mendoza opened long enough to yell, "[G]et the fuck off my property," before slamming it shut. From inside the house, Mendoza continued to

---

2. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict," *Layton City v. Carr*, 2014 UT App 227, ¶ 2 n.2, 336 P.3d 587 (cleaned up), and we recognize that the verdict may or may not stand following a new trial on remand.

yell, "You guys need to get off my property. You don't have a right to be here." Mendoza never told officers that he would not let the young woman come out and speak with them—only that they could not enter the house. But each time officers tried to speak with Mendoza he would "drop an f-word and tell [the police] to get off his property."

¶5      For the next ten minutes, officers struggled to learn anything about the young woman's medical status—whether she was "okay, or injured, or in need of assistance." Eventually, Mendoza's wife, who had stayed outside with the police, called Mendoza on the phone, after which the young woman came out of the house.[3] And after additional time and some persuasion, Mendoza came out himself, at which point officers arrested him for his role in allegedly obstructing the investigation.

¶6      As written, the obstruction of justice statute describes the requisite intent (its first element) and provides a list of various prohibited actions (its second element), *see* Utah Code Ann. § 76-8-306(1)(a)–(j) (LexisNexis 2017), and at trial, both the prosecution and the defense agreed on an obstruction of justice jury instruction that recited only certain parts from the statute. However, this instruction did not instruct the jurors that they needed to unanimously agree on which act Mendoza had committed to satisfy the statute's second element. Indeed, the court clarified that both counsel agreed on the instruction submitted, stating,

---

3. At trial, the young woman denied having been assaulted and testified that when police initially arrived, she went into the house "willingly," and that Mendoza never "told her not to cooperate with the police," never "threatened her," never "instructed her to lie for him," and never told "her to tell the police anything untruthful." In fact, she testified "that there was never a time that she felt uncomfortable or that she couldn't go and talk to the police because of" Mendoza.

> The other thing I wanted to make sure we're all on the same page, both of you only quoted a portion of all the different elements on obstruction of justice. My assumption is that you both—and you both quoted the exact same ones. So that is what I have incorporated here instead of just repeating the entire statute. Everyone is good with that?

(Cleaned up.) Both the State and Mendoza responded affirmatively. When explaining the instruction to the jury, the prosecutor noted the "various different ways to obstruct justice" but clarified, "[H]ere we are not dealing with all of them. We're focused on just a few." And, rather than provide a special verdict form requiring the jurors to indicate which act they unanimously agreed Mendoza had committed to satisfy the statute's second element the court allowed the jury to convict Mendoza for obstruction of justice by way of a general verdict form.

## ISSUE AND STANDARD OF REVIEW

¶7 On appeal, Mendoza contends that counsel rendered ineffective assistance by failing to either request an obstruction of justice jury instruction that explained that the jury needed to unanimously agree on which act Mendoza committed to satisfy the obstruction of justice statute's second element (unanimity instruction) or request a special verdict form that would have required the jury to agree on and indicate which specific statutory act Mendoza committed in satisfying the statute's second element (special verdict form).[4] "An ineffective assistance of counsel claim raised for the first time on appeal presents a

---

4. Because we reverse on the grounds indicated, we do not reach the other issues Mendoza has raised on appeal.

question of law." *State v. Bowen*, 2019 UT App 163, ¶ 15, 451 P.3d 1050 (cleaned up).

ANALYSIS

## I. Deficient Performance

¶8 Mendoza contends that counsel rendered ineffective assistance by failing to either request a unanimity instruction or request a special verdict form. To prevail on an ineffective assistance claim, Mendoza must first demonstrate that "his counsel's performance was deficient in that it fell below an objective standard of reasonableness." *State v. Scott*, 2020 UT 13, ¶ 28, 462 P.3d 350 (cleaned up). This requires Mendoza to demonstrate, "considering all the circumstances," that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). In other words, "to overcome the high level of deference we give to trial counsel's performance, [Mendoza] must show that counsel's representation fell below an objective standard of reasonableness when measured against prevailing professional norms." *See State v. Alires*, 2019 UT App 206, ¶ 17, 455 P.3d 636 (cleaned up). Here, counsel's failure to request an instruction or, alternatively, a special verdict form, that would require a constitutionally demanded level of juror unanimity fell below that objective standard and counsel thus rendered deficient performance.

¶9 The United States Constitution's Sixth Amendment requires that in criminal trials, a jury reach a unanimous verdict. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020) (stating that "the Sixth Amendment's unanimity requirement applies to state and federal criminal trials equally"). Article 1, section 10 of the Utah Constitution requires the same. And Utah Rule of Criminal Procedure 21(b) also requires that a verdict be "unanimous." But these unanimity requirements are "not met if a jury

unanimously finds only that a defendant is guilty of *a* crime." *See State v. Saunders*, 1999 UT 59, ¶ 60, 992 P.2d 951 (emphasis added). Rather, unanimity requires that the jury reach "unanimity as to each count of each distinct crime charged." *State v. Hummel*, 2017 UT 19, ¶ 26, 393 P.3d 314 (cleaned up). Additionally, the "jury must be unanimous on all elements of a criminal charge," *id.* ¶ 29 (cleaned up), including "alternative elements" such as the "alternative actus reus elements by which a person could be found guilty" of a crime, *Alires*, 2019 UT App 206, ¶¶ 20–21 (cleaned up).

¶10　Utah courts have recognized a distinction between "alternative elements," which require a jury to unanimously agree on which alternative act satisfies the element of the crime, and "alternative factual theories," which allow a jury to agree that the element of the crime has been satisfied without requiring the jury to unanimously agree on the factual theory that satisfied that element. *See id.* ¶ 20 (cleaned up) (citing *Hummel*, 2017 UT 19, ¶ 53).

¶11　In *State v. Alires*, 2019 UT App 206, 455 P.3d 636, the defendant faced charges for sexual abuse of a child under Utah Code section 76-5-404.1(2), which, in the same subsection, provided the criminal act's requisite intent and actus reus elements including "touching 'the anus, buttocks, pubic area, or genitalia of any child, the breast of a female child, or otherwise tak[ing] indecent liberties with a child.'" *Id.* ¶ 21 (quoting Utah Code Ann. § 76-5-404.1(2)). The jury instructions used in *Alires* allowed the jury to—and the jury did—vaguely convict the defendant based on various alleged inappropriate touches but without specifying which act of inappropriate touching constituted the act for which it convicted the defendant of each crime. *Id.* ¶¶ 1, 20–24. Noting that, based on this statute, a defendant could be "charged in separate counts and be convicted for each act that violates the statute," the court determined that "the sexual abuse of a child statute contains alternative actus reus elements by which a person could be

found guilty of sexual abuse" and, therefore, that each illegal touching "constitutes a distinct criminal offense." *Id.* ¶ 21 (cleaned up). Thus, the court determined that where the jury instruction failed to require the jurors to agree on which individual touching constituted the individual illegal act of which the defendant was being convicted, the jury instruction failed to require proper unanimity. *Id.* ¶¶ 20–24.

¶12    In so concluding, the court contrasted the statute at issue in *Alires*, with the statute at issue in *State v. Hummel*, 2017 UT 19, 393 P.3d 314. *See Alires*, 2019 UT App 206, ¶¶ 20–21. In *Hummel*, the defendant faced a charge for theft under Utah Code section 76-6-404, which provided that "[a] person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." *See* 2017 UT 19, ¶¶ 14, 56 (quoting Utah Code Ann. § 76-6-404 (LexisNexis 2017)). The *Hummel* court went on to explain that in Utah, "theft" "is a single crime," *id.* ¶ 19 (citing Utah Code Ann. § 76-6-403 (LexisNexis 2017), that the code described the elements of theft in a new section, *id.* (citing Utah Code Ann. § 76-4-404), and that after setting forth these "simple and straightforward" "general elements" of the offense, the code then went on to provide, in subsequent sections, various "*means* by which those elements may be fulfilled," including by "deception" or "extortion," *see id.* ¶ 19 & n.7 (citing Utah Code Ann. §§ 76-6-405, -406). However, the *Hummel* court stated that the provisions referencing deception and extortion "set forth only non-exhaustive examples. They describe illustrative ways that the single crime of theft may be committed." *Id.* ¶ 19. In so concluding, the court explained that a defendant could not escape a charge of theft merely by claiming that the defendant's manner of theft, despite meeting the general elements set forth in section 404, was not specifically enumerated in a subsequent section—specifically, the court noted,

> A defendant could hardly escape a theft charge by
> admitting he obtained or exercised unauthorized

control over the property of another with a purpose to deprive him thereof but insisting that he didn't do so in any of the specific manners set forth in sections 405 through 410. (A pickpocket, for example, is still guilty of theft even if pickpocketing is not expressly set forth as a manner of committing theft.)

*Id.* ¶ 19 n.7 (cleaned up). Thus, the *Hummel* court rejected the idea that the jury needed to unanimously agree on whether the theft was committed by deception or extortion because "neither of [the provisions referencing deception and extortion] purports to define a separate crime. Both define the crime of *theft*. For that reason they do not alter the *elements of theft*, or add in any way to what the jury must find to enter a verdict on a charge of theft." *Id.* ¶ 60 (cleaned up). In other words, "[t]he statutory examples of means by which a person can meet the elements of the single crime of theft are not 'alternative actus reus elements' of theft. They are simply *exemplary means* of satisfying the criminal elements defined by the legislature" as theft. *Id.* ¶ 61.

¶13    So, in *Alires*, where the statute at issue listed various body parts that the legislature declared illegal to touch, the court determined the statute's various designations of touching constituted independent "alternative elements," each of which constituted an independent crime, and the court distinguished that statutory structure from the one in *Hummel*, where the theft statute's various sections and designations of ways to commit theft constituted "alternative factual theories" by which the elements of theft could be enacted, but which did not amount to independent crimes. *See Alires*, 2019 UT App 206, ¶¶ 20–21 (cleaned up). Here, we determine that the obstruction of justice statute's various ways to perform the actus reus of the crime constitute alternative elements, the commission of any one of which could satisfy that statutory element, but which also require the jury to "agree that the same underlying criminal act has been

proved beyond a reasonable doubt." *See id.* ¶ 22 (cleaned up); *see also State v. Rasabout*, 2015 UT 72, ¶¶ 26–27, 356 P.3d 1258 (affirming "each discrete shot" as the unit of prosecution for "unlawful discharge of a firearm" and stating that the state may charge "a defendant with multiple violations consistent with the statutorily defined unit of prosecution").

¶14　Utah Code section 76-8-306(1)(a)–(j) provides,

> (1) An actor commits obstruction of justice if the actor, with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense:
>
>> (a) provides any person with a weapon;
>>
>> (b) prevents by force, intimidation, or deception, any person from performing any act that might aid in the discovery, apprehension, prosecution, conviction, or punishment of any person;
>>
>> (c) alters, destroys, conceals, or removes any item or other thing;
>>
>> (d) makes, presents, or uses any item or thing known by the actor to be false;
>>
>> (e) harbors or conceals a person;
>>
>> (f) provides a person with transportation, disguise, or other means of avoiding discovery or apprehension;
>>
>> (g) warns any person of impending discovery or apprehension;

> (h) warns any person of an order authorizing the interception of wire communications or of a pending application for an order authorizing the interception of wire communications;
>
> (i) conceals information that is not privileged and that concerns the offense, after a judge or magistrate has ordered the actor to provide the information; or
>
> (j) provides false information regarding a suspect, a witness, the conduct constituting an offense, or any other material aspect of the investigation.

(LexisNexis 2017).

¶15   That is, to find a person guilty of obstruction of justice, a jury must determine that the person has done two things: (1) acted with the appropriate intent as described in section 76-8-306(1) and (2) committed any one of the specific acts listed in section 76-8-306(1)(a)–(j). Each act listed serves as an alternative actus reus element, and like the statute in *Alires*, each enumerated act could constitute an independent offense. In contrast to the statute at issue in *Hummel*, instead of presenting alternative methods or theories as to how a separate actus reus element could be committed, these listed items themselves constitute independent ways to satisfy a statutory actus reus element and thus constitute independent alternative elements. We can, however, imagine a statute constructed differently—one that would require specified requisite intent and that the person *obstructed an investigation*, potentially by a method identified in Utah Code section 76-8-306(1)(a)–(j)—thus allowing the jury to be unanimous as to the intent and obstruction elements but allowing it to remain inconclusive about which act constituted the obstruction. But this is not the statute the legislature enacted.

The legislature instead identified the nature of intent required—the first element—and rather than include an element devoted to obstruction generally (with various potential ways to obstruct), the legislature listed numerous acts, the commission of any one of which would satisfy the second element. Thus, as the statute is written, to unanimously determine that the second element has been met, instead of simply agreeing that obstruction has occurred, the jury must unanimously agree on which particular obstructive act constituted that second element.

¶16 Here, trial counsel failed to request an instruction that actually reflected the statute's structure. Instead of requiring the jury to specify which statutorily prohibited act Mendoza engaged in, the jury instruction allowed for, and indeed invited, ambiguity. The instruction required the jury to find only that Mendoza "did any of the" items provided on the list without explaining the need to reach unanimity as to which act Mendoza committed to satisfy the statute's second element. And this problem was compounded by the fact that the jury was not required to demonstrate unanimity by specifying, through a special verdict form, which act Mendoza had committed in satisfying that statutory element. As such, "the jury was never instructed that it must unanimously agree that [Mendoza] committed the same unlawful act" to meet the elements required for obstruction of justice. *See Alires*, 2019 UT App 206, ¶ 23. But our law regarding jury unanimity does require that jurors agree on each element of a crime, including which "alternative element" a defendant committed. *See id.* ¶¶ 20–21. And counsel's failure to request a jury instruction in accordance with that law unreasonably simplified the jury's task and thereby lightened the State's burden.

¶17 Indeed, a jury with each juror relying on that juror's own individual view in determining which one of many various acts had been committed in order to satisfy the elements of a particular crime might face little difficulty in reaching a verdict; on the other hand, a jury forced to deliberate regarding the

specific details would face a steeper climb to determine that each juror agreed on which act had actually occurred; and consequently, the State would face a more challenging task of persuading the jury to agree, with specificity, on whether a particular act had been committed. Regarding these circumstances, trial counsel bears a duty to assist the defendant in reaping the benefits of a jury trial and to hold the State to its full and complete burden of proof. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984) ("Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process."). Here, no objectively competent attorney would have failed to request a clarifying instruction in order to avoid streamlining the jury's path to a verdict or allowing the State to carry a burden any lighter than what our law requires. In this regard, counsel's failure fell below an objective standard of reasonableness.

## II. Prejudice

¶18 In addition to demonstrating counsel's deficient performance, Mendoza must also demonstrate that "the deficient performance prejudiced" him such that there exists "a reasonable probability that the outcome of his . . . case would have been different absent counsel's error." *See State v. Scott*, 2020 UT 13, ¶¶ 28, 43, 462 P.3d 350 (cleaned up). This "reasonable probability" exists when, after considering "the totality of the evidence before the judge or jury," *State v. Alires*, 2019 UT App 206, ¶ 27, 455 P.3d 636 (cleaned up), the alleged prejudice undermines our confidence in the proceeding's outcome, *Scott*, 2020 UT 13, ¶ 43. Consequently, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland v. Washington*, 466 U.S. 668, 696 (1984).

¶19 Here, as Mendoza rightly points out, the ultimate question is, "[W]hich of the alternatives . . . did the jurors agree upon beyond a reasonable doubt"? "[D]id they agree on any

particular one? Did some agree on [one], beyond a reasonable doubt, and others agree on [another], beyond a reasonable doubt, and yet others agree on [a third], beyond a reasonable doubt?" And we agree with Mendoza's assessment that the statute's—and by association the instruction's—"grab bag of 'elements' provides plenty for the jury to disagree on." Although, as Mendoza argues, "the jury had to agree on at least one of the alternatives unanimously," the instruction provided to the jury renders it impossible to determine whether the jury reached any level of unanimity regarding the specifics of obstruction of justice's second element. The prosecutor noted the "various different ways to obstruct justice" but stated, "[H]ere we are not dealing with all of them. We're focused on just a few." In so doing, the prosecutor lumped numerous actions together and urged the jury to convict on any of them instead of putting all his eggs in one basket and arguing that the jury should unanimously determine that Mendoza committed any one particular action. This decreases our confidence that the jurors unanimously agreed that Mendoza had committed a specific act.

¶20 Had the evidence in this case clearly illustrated an example of the statutorily prohibited conduct, we might be inclined to affirm for lack of prejudice. But to be frank, none of the facts presented here obviously fall within any of the enumerated alternative elements. Although Mendoza used strong language in informing the police of his distaste for their presence, nothing in this language amounts to the type of force or intimidation that could prevent the police from investigating a crime, *see* Utah Code Ann. § 76-8-306(1)(b) (LexisNexis 2017)— in fact, no evidence suggests that the police tried to do anything except speak with Mendoza, and until Mendoza responded to his wife's phone call, nothing suggests that Mendoza even knew what the police wanted, *see supra* ¶¶ 3–5. Further, although the police were unable to make contact with the alleged assault victim as quickly as they wanted to, nothing indicates that Mendoza himself harbored or concealed her, *see* Utah Code Ann.

§ 76-8-306(1)(e)—in fact, the trial testimony suggested that at all times the young woman acted of her own volition in returning to the house and exiting the house when she did, *see supra* note 3.

¶21   Reviewing the record ourselves, we remain unsure as to how Mendoza's conduct might have satisfied any of the alternative elements, let alone whether and how the jury would have unanimously agreed on which alternative element Mendoza's conduct satisfied. We agree with Mendoza that "[a]ny presumption that the jury would have voted on any particular element or elements is simply speculation," and had the jury been required to deliberate regarding the specific act that satisfied the statutory element, we believe there exists a reasonable probability that the proceeding's outcome would have differed—suffice it to say, our confidence in the proceeding's outcome has been undermined.

CONCLUSION

¶22   Counsel rendered ineffective assistance in failing to either request a unanimity instruction or request a special verdict form, and this failure has prejudiced Mendoza in a way that has undermined our confidence in the proceeding's outcome. We therefore reverse and remand for a new trial and direct the court to either instruct the jurors that they must agree on which act Mendoza committed to satisfy the statute's second element or provide a special verdict form requiring the jurors to indicate which act they agree Mendoza has committed to satisfy the statute's second element—and preferably, both.

———————