2022 UT App 79

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ARTER OCTAVIO PHILLIPS,
Appellant.

Opinion
No. 20190170-CA
Filed June 24, 2022

Second District Court, Ogden Department
The Honorable Jennifer L. Valencia
No. 161901389

Emily Adams and Cherise M. Bacalski,
Attorneys for Appellant

Sean D. Reyes and David A. Simpson,
Attorneys for Appellee

JUSTICE DIANA HAGEN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.[1]

HAGEN, Justice:

¶1      A jury convicted Arter Phillips of two counts of child rape. At trial, the jury heard evidence that Phillips's DNA had been found on one pair of the victim's semen-stained underwear. The defense maintained that Phillips's DNA must have transferred to the victim's underwear in the laundry from a towel he used after having sex with his wife. In closing argument, the prosecutor

---

1. Justice Diana Hagen began her work on this case as a judge of the Utah Court of Appeals. She became a member of the Utah Supreme Court thereafter and completed her work on the case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(4).

pointed out that only Phillips's and the victim's DNA profiles were found on the underwear, not the wife's.

¶2　During trial, the prosecutor received a report that Phillips's DNA had been found on two additional pairs of the victim's underwear and that a third "unknown contributor" was also detected on one of those pairs. Phillips's attorney refused to stipulate to the admission of the late-disclosed report, and the evidence was never presented to the jury. On appeal, Phillips argues that his attorney's refusal to stipulate amounted to ineffective assistance of counsel because the presence of a third contributor could have supported the defense theory. He also argues that his attorney was ineffective when he failed to object to the prosecutor's statement in closing argument that there were "only two people in this sample"—Phillips and the victim. Because Phillips has not shown that his attorney's performance was constitutionally deficient in either respect, we affirm his convictions.

## BACKGROUND[2]

¶3　Phillips sexually abused the victim, a thirteen-year-old family member, beginning when she was five years old. The abuse occurred "[t]oo many [times] to count," with the most recent incident taking place on January 10, 2015—five days before the victim reported Phillips to law enforcement.

¶4　Officers obtained a search warrant for Phillips's home the following day. Once there, officers collected a bag of the victim's soiled underwear, along with other physical evidence. Technicians at the State's crime lab detected traces of semen on

---

2. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Rosen*, 2021 UT App 32, n.1, 484 P.3d 1225 (cleaned up).

three pairs of the victim's underwear and, accordingly, sent cuttings of the underwear for DNA testing. Results for one pair returned before the others, revealing a match to Phillips's DNA profile as well as the victim's. No other DNA profile was detected. The State's witnesses, including a crime lab technician and two DNA experts, later testified about this at trial.

¶5 Officers confronted Phillips with the DNA results during the investigation, and Phillips explained that his semen could have transferred onto the victim's underwear in the laundry. Phillips recalled having sex with his wife around the date the victim reported him to law enforcement. He reported that he had cleaned himself with a towel and placed it in a shared laundry basket for "whites and towels and all that." Because the victim's soiled underwear would have been in the same laundry basket, Phillips supposed that his semen must have transferred from the towel to the underwear. Phillips testified about the shared laundry basket again at trial.

¶6 On day two of trial, the prosecution notified defense counsel and the court that DNA results for the remaining two pairs of underwear had just arrived. Like the first pair of underwear, the prosecution represented that Phillips's DNA had been found on both the second and third pairs. There was, however, "one unknown contributor in one of the samples," and the prosecution did not "know where it came from."

¶7 "[B]ecause of the late notice," the parties agreed that they would proceed with trial "as if [the new DNA results] don't exist at this point." Addressing the court, defense counsel stated,

> What was testified on the stand yesterday, we have had that information for months. What [the prosecution is] talking about is information they got yesterday which, you know, the rules say I've got to have more time than that. The other option is we could just continue the trial. So, under the rules,

> because it's not been provided timely, . . . it's not admissible, basically, unless I stipulate.

The court excluded the newly arrived evidence per the parties' stipulation.

¶8    When one of the State's DNA experts took the stand, defense counsel attempted to boost Phillips's explanation for how his semen had been found on the victim's underwear. Defense counsel asked whether it was possible for "DNA to transfer from one [item] to the other" when "the clothing is mixed, combined." The DNA expert responded that "[i]f two items were in contact like that, it may be possible."

¶9    The State pushed back in closing argument. Reminding the jury of the DNA results from the first pair of underwear, the prosecution invited the jury to consider "who else's DNA should be there if [Phillips's] story is correct? You heard [the DNA expert] say there are only two people in this sample. One is Arter Phillips, one is [the victim]. Who is not there? [Phillips's wife]. He didn't have sex with his wife. . . . But why does he remember January 10th, 2015? Ladies and gentlemen, it's because it's the last time this man had sex with [the victim]."

¶10    The jury found Phillips guilty, and he now appeals.

ISSUES AND STANDARD OF REVIEW

¶11    Phillips argues that he received ineffective assistance of counsel on two grounds: (1) defense counsel's refusal to stipulate to the admission of the additional DNA results, which showed a third DNA contributor on one of the pairs of underwear, and (2) defense counsel's failure to object when the State attacked Phillips's story during closing argument. Because Phillips raises these claims "for the first time on appeal, there is no lower court ruling to review." *See Layton City v. Carr*, 2014 UT App 227, ¶ 6,

336 P.3d 587. We must therefore "decide whether [he] was deprived of the effective assistance of counsel as a matter of law." *Id.* (cleaned up).

## ANALYSIS

¶12   Ineffective assistance claims require a two-part showing: "(1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense." *Provo City v. Bishop-Garcia*, 2022 UT App 16, ¶ 16, 505 P.3d 81 (cleaned up). Counsel's performance is deficient if, "considering all the circumstances, counsel's acts or omissions were objectively unreasonable." *State v. Scott*, 2020 UT 13, ¶ 36, 462 P.3d 350. And counsel's deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Honie v. State*, 2014 UT 19, ¶ 33, 342 P.3d 182 (cleaned up). Because a defendant must affirmatively prove both prongs of an ineffective assistance of counsel claim, "it is not necessary for us to address both components of the inquiry if we determine that a defendant has made an insufficient showing on one." *Archuleta v. Galetka*, 2011 UT 73, ¶ 41, 267 P.3d 232 (cleaned up). Here, we conclude that both of Phillips's ineffective assistance of counsel claims fail because he has not proved that his counsel's performance was objectively deficient.

### I. Exclusion of DNA Evidence

¶13   Phillips argues that defense counsel "performed deficiently when he stipulated that evidence that [the victim's] underwear contained a third DNA profile should not come in at trial." In Phillips's view, such evidence would have supported his explanation for how his semen had been found on the victim's underwear. That is, because Phillips stated that he had cleaned himself with a towel after having sex with his wife, the presence

of a third DNA profile on the victim's underwear would have been consistent with Phillips's story.

¶14    Because the additional DNA results are not in the record, Phillips requests a remand to supplement the record under rule 23B of the Utah Rules of Appellate Procedure. *See State v. Guerro*, 2021 UT App 136, ¶¶ 45–48, 502 P.3d 338 (holding that defendant could not establish ineffective assistance based on evidence in a DNA report that was missing from the record). "Rule 23B provides a mechanism for criminal defendants to supplement the record with facts that are necessary for a finding of ineffective assistance of counsel but which do not appear in the record." *State v. Cecala*, 2021 UT App 141, ¶ 32, 502 P.3d 790 (cleaned up). "A remand under rule 23B is available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *State v. Crespo*, 2017 UT App 219, ¶ 24, 409 P.3d 99 (cleaned up). Accordingly, we must assess whether Phillips's allegations, if proven, would establish an ineffective assistance of counsel claim. *See State v. Gallegos*, 2020 UT 19, ¶ 39, 463 P.3d 641.

¶15    Phillips has provided an affidavit from his appellate counsel along with the second DNA report that he seeks to admit into evidence on remand. That report indicates that semen stains from two additional pairs of the victim's underwear were submitted for analysis. Both samples contained Phillips's and the victim's DNA, but one of the samples also contained an unknown third-party profile. Even accepting these proffered facts as true, however, Phillips cannot show that defense counsel rendered deficient performance by refusing to stipulate to the admission of that evidence. Rather, defense counsel's strategic decision—that the inculpatory nature of the newly arrived DNA results outweighed any exculpatory value—was not objectively unreasonable.

¶16    We "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Ray*, 2020 UT 12, ¶ 34, 469 P.3d 871 (cleaned up). Thus, "[i]f it appears counsel's actions could have been intended to further a reasonable strategy, a defendant has necessarily failed to show unreasonable performance." *Id.* Further, "it is not enough for the defendant to simply point to some strategy other than the one that counsel employed that looks superior given the actual results of trial." *State v. Wright*, 2021 UT App 7, ¶ 53, 481 P.3d 479 (cleaned up). So long as the strategy selected was reasonable in the moment, we defer "to the professional judgment of counsel," regardless of the end result. *Id.* (cleaned up); *see also Ray*, 2020 UT 12, ¶ 31 ("The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct." (cleaned up)).

¶17    Here, even though the existence of the third DNA profile on one of the pairs of underwear might have been helpful to the defense theory, counsel could have reasonably concluded that any such benefit was outweighed by the risk of admitting the evidence. When presented with the additional DNA results, counsel had a choice. He could stipulate to the report's admission in hopes of persuading the jury that the third DNA contributor was Phillips's wife, despite the fact that there was no third contributor found on the two other pairs of underwear. Alternatively, counsel could refuse to stipulate, removing two out of three semen-stained pairs of underwear—all bearing Phillips's DNA—from consideration by the jury altogether. The latter option was an objectively reasonable trial strategy, which we will not second-guess on appeal.

¶18    Even if the second DNA report was added to the record, Phillips could not establish that his counsel rendered ineffective assistance in not stipulating to the admission of that evidence at trial. We therefore deny his request for a remand under rule 23B.

## II. Failure to Object During Closing Arguments

¶19  Phillips next argues that defense counsel should have objected when the prosecution said that "there was no third DNA contributor in the evidence" during closing argument.[3] As Phillips sees it, "the prosecutor knew that there was a third unidentified DNA contributor and had agreed to not admit evidence of that contributor at trial." So when the prosecutor pointed out that no third DNA contributor had been found on the single pair of underwear that the State's witnesses did discuss at trial, Phillips contends that "the prosecut[ion] breache[d] its agreement and misconstrued the evidence, arguing false inferences to the jury." We disagree.

¶20  As with any decision by counsel not to object, we must "determine whether correcting the error was sufficiently important under the circumstances that failure to do so was objectively unreasonable—i.e., a battle that competent counsel would have fought." *State v. Ray*, 2020 UT 12, ¶ 32, 469 P.3d 871. We bear in mind there are several reasons for counsel to refrain from objecting during closing argument, since doing so risks "highlighting problematic evidence" or "annoying the jury." *State v. Hummel*, 2017 UT 19, ¶ 110, 393 P.3d 314. Accordingly, our supreme court has instructed that "the question is not whether the prosecutor's comments were proper, but whether they were so improper that counsel's only defensible choice was to interrupt those comments with an objection." *State v. Houston*, 2015 UT 40, ¶ 76, 353 P.3d 55 (cleaned up). Short of that, we presume that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

---

3. The State contends that this argument also turns on whether this court grants Phillips's rule 23B motion. We believe that the record is sufficiently complete, however, to address the merits of Phillips's argument.

¶21   The prosecutor's statement in this case did not mischaracterize the evidence. Discussing the DNA results from the first pair of underwear—the only DNA results admitted at trial—the prosecutor said, "You heard [the DNA expert] say there are only two people in this sample. One is Arter Phillips, one is [the victim]. Who is not there? [Phillips's wife]." That statement was accurate; there was no third DNA contributor detected on the first pair of underwear. The prosecution was therefore within its "right to argue the case based on the total picture shown by the evidence" at trial. *See Houston*, 2015 UT 40, ¶ 76 (cleaned up).

¶22   At the very least, reasonable defense counsel could have decided not to object. Counsel could have reasonably determined, as we do, that the prosecutor's statement was a fair description of the evidence and that objecting would be futile. *See State v. Makaya*, 2020 UT App 152, ¶ 9, 476 P.3d 1025. Or that the prosecutor's statement was not so inaccurate to risk highlighting unfavorable evidence or annoying the jury by objecting. *See Hummel*, 2017 UT 19, ¶ 110. In other words, objecting was not counsel's "only defensible choice." *See Houston*, 2015 UT 40, ¶ 76 (cleaned up).

¶23   Accordingly, counsel did not render deficient performance by failing to object during the prosecution's closing argument. Phillips thus did not receive ineffective assistance of counsel in this respect.

CONCLUSION

¶24   Phillips has not shown that his counsel's performance at trial was objectively unreasonable. Therefore, his ineffective assistance of counsel claims fail, and his convictions are affirmed.

———————